[Sac. No. 5935.   In Bank.   Feb. 28, 1950.]

ALICE D. CODORNIZ, Appellant, v. JOSEPH M. CODORNIZ, Respondent.

Brown, Ford & Cooney for Appellant.

Rutledge & Rutledge and Ralph W. Rutledge for Respondent.

SCHAUER, J.—Plaintiff appeals from an order made by the trial court upon application of defendant, reducing the monthly payments ordered to be paid by defendant to plaintiff under the terms of an interlocutory and a final decree of divorce. Plaintiff contends that the payments were ordered as ''a part of the division of the community property by the Court,'' and hence were not subject to modification. We have concluded that the trial court was justified in determining that such payments were in the nature of alimony and child support and could and should be reduced, and that the order appealed from must be affirmed.

In May, 1944, plaintiff sued defendant for divorce on the ground of extreme cruelty. She alleged, among other things, that she was then earning $65 a month and in addition was receiving $140 a month from defendant for her support and that of the three minor children of the parties, and that as community property the parties were possessed of a one-third interest in a dairy business having a value of approximately $30,000. Plaintiff prayed for a decree of divorce, for custody of the three children, that defendant be ordered to pay her attorney's fees and court costs, that he also ''be ordered to

pay the sum of $75.00 a month to plaintiff as alimony, and the sum of $105.00 a month for the support and maintenance of said minor children," and for other "fit and proper" orders. In his answer defendant denied "that the parties are possessed of a one-third interest in the dairy . . . and . . . alleges that he is buying said interest on installment payments, most of which are yet unpaid."

In June, 1944, plaintiff was granted an interlocutory decree of divorce on the ground of cruelty, and was also awarded custody of the three children. The testimony was not reported, and findings were waived. In June, 1945, the final decree was entered. Each of the decrees contains a provision adjudging "That the community property of the parties hereto consisting of an equity in an undivided one-third (1/3) interest in and to . . . a dairy business [and the land upon which such business is operated*] . . . be awarded to the Defendant, subject, however, to the following charges, restrictions and conditions:

"1. Defendant herein shall pay to Plaintiff herein the sum of One Hundred Forty Dollars ($140.00) per month, as and for the support and maintenance of Plaintiff and the minor children of the parties hereto, on the first day of each and every calendar month.

"2. Defendant herein shall furnish Plaintiff and the minor children of the parties hereto, until further order of the Court, milk and cream at Defendant's sole cost and expense."

Defendant paid the $140 a month to plaintiff through August, 1946. He then learned that plaintiff had remarried in July, 1946, and he reduced the payments to $70 a month for September and October, 1946. In the latter month the oldest of the three children, a daughter, also married, and defendant thereafter paid only $50 a month. In November, 1947, plaintiff sought a contempt order against defendant by reason of the reduced payments, and defendant on the ground of changed circumstances applied to the court for a modification of the final decree by eliminating therefrom provisions for the support of plaintiff and of the married daughter. A consolidated hearing on the two matters was held before the same judge who had rendered the divorce decrees. At the hearing the court, over plaintiff's objection that the court was without jurisdiction to change the property and support provisions of the final decree, heard evidence concerning those

---

*The clause including the land appears in the final decree only.

issues and rendered its order modifying the divorce decrees by relieving the defendant from payments for plaintiff's support as of the date she remarried, reducing the support payments for the three children to the sum of $105 a month to the date of the marriage of the elder daughter (Oct. 15, 1945) and to the sum of $70 a month thereafter, and releasing defendant's one-third interest in the dairy property (including the land) from "all of the charges, restrictions and conditions" imposed thereon by the interlocutory and final decrees of divorce. This appeal by plaintiff followed.

As declared in *Puckett* v. *Puckett* (1943), 21 Cal.2d 833, 840 [136 P.2d 1], "a provision for the payment of alimony to the wife in a divorce decree, granted to the wife for the offense of the husband, may be modified by the court under appropriate circumstances. (Civ. Code, sec. 139.) . . . A divorce decree adjusting the property rights of the parties is not subject to modification regardless of whether or not it is based upon the agreement of the parties." (See also *Leupe* v. *Leupe* (1942), 21 Cal. 2d 145, 148 [130 P.2d 697] ; *Adams* v. *Adams* (1947), 29 Cal.2d 621, 625 [177 P.2d 265] ; *Dupont* v. *Dupont* (1935), 4 Cal.2d 227, 228 [48 P.2d 677] ; *Ettlinger* v. *Ettlinger* (1935), 3 Cal.2d 172, 178 [44 P.2d 540] ; *Fields* v. *Fields* (1949), 94 Cal.App.2d 56, 58 [209 P.2d 977].)

It has also been held that in modification proceedings the trial court has jurisdiction to determine whether the decree was based upon a property settlement agreement with payments provided as a phase of property adjustment and therefore not subject to modification or was based upon alimony or support allowance covenants and therefore subject to modification. (See *Hough* v. *Hough* (1945), 26 Cal.2d 605, 615 [160 P.2d 15], and cases there cited; *Alexander* v. *Alexander* (1948), 88 Cal.App.2d 724, 727 [199 P.2d 348].) In the Hough case this court pointed out that "In various cases it has been assumed that the court may pass upon that issue or similar issues in such proceedings." In the same case we quoted with approval the following statement from *Wallace* v. *Wallace* (1934), 136 Cal.App. 488, 493 [29 P.2d 314], made on appeal from an order denying a motion for modification: "Furthermore, this agreement was before the court upon the order for modification, and upon that hearing the court made the findings given above, to the effect that the payments directed to be made were not in the nature of alimony but was the balance of the sums due plaintiff under said contract of property settlement. That being a definite finding upon

the issue before the court, we are bound thereby. As the court said in *Atlass* v. *Atlass* [1931], 112 Cal.App. 514 [297 P. 53], 'Had the court found the provisions for support to have been in fact by way of property settlement, then the said provisions could not have been disturbed . . .' There was ample evidence to support the finding in the instant case and we must therefore accept the same as true.'' (See, also, *Weedon* v. *Weedon* (1949), 92 Cal.App.2d 367, 369 [207 P.2d 78]; *Fields* v. *Fields* (1949), *supra,* 94 Cal.App.2d 56, 58.)

█ It follows from the rules just stated that the trial court likewise has jurisdiction, in a proceeding such as this, to determine whether payments ordered under a decree concededly not based (at least not directly or wholly) upon a property settlement agreement were intended to be in lieu of property rights and not subject to modification, or were meant wholly or partially as alimony and child support provisions and were therefore subject to modification, and that that court's findings based upon "ample evidence to support" such findings are likewise binding upon an appellate court.

At the hearing on the modification application here, the trial judge declared it to be his "definite recollection that the testimony [at the divorce trial] showed that at that time the community interest in the contract of purchase of the dairy business . . . was very, very slight . . . [T]he Court remembers very distinctly that the defendant testified . . . that as far as he was concerned he was willing—and did consider the equity of the community in the contract as being of practically no value—and he made the offer in court that he'd be very willing to step down and out and forget about it, and if she wanted the interest in the dairy property she could have it . . . He was willing to turn it over to her if she wanted it.'' The judge further stated that "the Court, in keeping with that proof introduced at the trial of this case, made a ruling awarding all of the interest in the community property to the defendant so as to enable him to properly comply with the Court's order for the support of the children and of the widow . . . The testimony at the time was that the community value in the contract of the purchase . . . was practically valueless, and that was the reason the Court made the order. The proof was very very definite on that; there is no question about that.''

█ Both plaintiff and defendant testified at the modification hearing that at the time of the divorce "around $3,000" had been paid toward purchase of the interest in the dairy.

Defendant further stated that the full purchase price of the one-third share was $7,500, "not a cent down. I was paying it so much a month," and that his average income from operation of the dairy, to which he devoted his own services, was $267 monthly. Concerning testimony by plaintiff that the valuation of such share "was said to be $10,000.00," the court stated, "if there had been any testimony at the time of the interlocutory decree that there was a community interest in that property of $10,000.00, the Court certainly would not have made an order awarding all of the community property to the defendant; because that was not the testimony." At the modification hearing the parties testified further that certain other community property had been divided between them outside of the divorce suit: plaintiff had received furniture and a savings account and defendant received an automobile. In addition to the evidence summarized above is the fact that in her complaint for divorce plaintiff asked for the payment of monthly *alimony* and support for the children, and did not seek any interest in the community property. With the recited facts in mind it is apparent that the trial court was warranted in its holding that the payments ordered in the divorce decrees were intended as alimony and child support, and were consequently subject to modification upon the showing of the changed circumstances of the parties.

Plaintiff relies upon the rule stated in *Treece* v. *Treece* (1932), 125 Cal.App. 726, 728 [14 P.2d 95], that "Judgments are to have a reasonable intendment [citation], and where *it* admits of two constructions that one will be adopted which is consonant with the judgment which should have been rendered on the facts and law of the case [citation]," and urges that inasmuch as the divorce was granted to her upon the ground of extreme cruelty she was entitled to more than half the community property and therefore the divorce decrees, under which the dairy interest was awarded to defendant subject to the payments ordered to be made to plaintiff, must be construed as an adjustment of the property rights of the parties. Although it was held in *Tipton* v. *Tipton* (1930), 209 Cal. 443, 444 [288 P. 65], that "the plain inference to be derived" from the code sections (Civ. Code, §§ 146, 148) having to do with the assignment of community property by the court "is that when the divorce is granted on the ground of extreme cruelty the non-offending party is entitled to more than that awarded to one who is at fault," that holding was announced on appeal from an interlocutory decree granted on

the ground of extreme cruelty, in which "all of the community property, consisting of real estate of the value of $2,500, and an automobile" was awarded to defendant husband. By contrast, the community property involved in the instant divorce suit (being only the equity in the undivided one-third interest in the dairy business and land, all other community property having been previously divided otherwise than by court order in this divorce action) was stated by the court to be "practically valueless" and to have been awarded to defendant to enable him *to earn through his own services* the·money with which to pay the *alimony and support money* for the children, which was sought by plaintiff in her complaint for divorce. Since we do not have here an appeal from the basic judgment in the divorce suit, and have no means of knowing what evidence was before the court at the trial of that action, we have no legitimate basis for assuming that the court erred in such basic decision or that on the motion its construction of its own judgment was inaccurate. Indeed, such evidence as is disclosed suggests that the trial court was quite right in concluding that the dairy equity was "practically valueless": defendant, by devoting his services to the dairy, was able to draw from it only $267 monthly. Obviously, the rule of the Tipton case is not controlling on this appeal.

■ It is, of course, established that upon the remarriage of the wife the husband is relieved of the obligation to pay alimony to her (Civ. Code, § 139; see *Hale* v. *Hale* (1935), 6 Cal.App.2d 661, 663 [45 P.2d 246]), and that his obligation to support children of the marriage (other than under the conditions contemplated by section 206 of the Civil Code, not involved here) ceases upon their emancipation or reaching majority (*Hale* v. *Hale* (1935), *supra; Meek* v. *Meek* (1942), 51 Cal.App.2d 492 [125 P.2d 117] ; *Putnam* v. *Putnam* (1942), 51 Cal.App.2d 696, 699 [125 P.2d 525] ; see, also, *Hough* v. *Hough* (1945), *supra,* 26 Cal.2d 605, 608). In both the Meek and the Putnam cases it was held that in modification proceedings the trial court could, and in the Putnam case correctly did, interpret an agreement between the parties for payment by the husband of money for child support, as terminating when the children reached majority.

■ Plaintiff also complains of refusal by the court at one stage in the modification proceedings to permit her to testify as to whether she received "any of the community property outside of" the divorce decree. However, as appears hereinabove, she was later allowed to give her testimony on this

phase of the case, and consequently any error in the earlier ruling of the court was not prejudicial to her.

For the reasons stated hereinabove, the order appealed from is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

In my opinion the order affirmed herein deprives plaintiff of the share of the community property to which she is entitled under section 146 of the Civil Code.

When the divorce decree awards some property to each party and also provides·for monthly payments, without specifying whether they are part of a property settlement or alimony, it may be difficult to determine what they are. (See *Puckett* v. *Puckett,* 21 Cal.2d 833, 841 [136 P.2d 1]; *Hough* v. *Hough,* 26 Cal.2d 605, 615 [160 P.2d 15]; *Adams* v. *Adams,* 29 Cal.2d 621, 625 [177 P.2d 265].) When, as in this case, however, the court awards all the community property to the husband, the monthly payments clearly constitute part of a settlement of property rights.

It is undisputed that when the interlocutory decree of divorce was entered approximately $3,000 had been paid for the community interest in the dairy. Plaintiff was granted a divorce on the ground of extreme cruelty and was therefore entitled to at least half the community property. (Civ. Code, § 146.) The court awarded all the community property to defendant and ordered him to pay plaintiff $140 per month for the support and maintenance of herself and the three minor children. These payments were made a charge against the community property awarded to defendant. Since Civil Code, section 146, guarantees plaintiff at least half the community property, the decree ordering payments to her must be interpreted as a decree adjusting the property rights of the parties to protect her interest in the community property. The holding that the payments were alimony and subject to modification is in fact a holding that the trial court entered a decree it could not validly enter. It is settled that if a judgment is susceptible of two interpretations, one of which would make it invalid and the other valid, it must be given the interpretation that renders it valid. (*Treece* v. *Treece,* 125 Cal. App. 726, 728 [14 P.2d 95]; *Watson* v. *Lawson,* 166 Cal. 235, 242 [135 P. 961]; *Webster* v. *Webster,* 216 Cal. 485, 488 [14 P.2d 522]; *Hogarty* v. *Hogarty,* 188 Cal. 625, 627 [206 P. 79].)

In *Tipton* v. *Tipton*, 209 Cal. 443 [288 P. 65], a decree awarding the defendant all the community property, consisting of real estate worth $2,500 and an automobile, was reversed on the ground that Civil Code, section 146, guarantees the plaintiff at least half the community property when the divorce is granted on the ground of extreme cruelty. The majority opinion attempts to distinguish the Tipton case on the ground that the trial judge considered the $3,000 equity in the dairy business to be "practically valueless." A $3,000 equity in a dairy business worth $30,000 is not "practically valueless."

At the very least, the equity in the dairy had the value of a right to complete the purchase of the one-third interest. Whatever the court thought of the value of the property, there can be no doubt that had there been no award of monthly payments plaintiff would have been deprived of her share thereof. She is just as much deprived of that share when the court terminates the payments on the ground that they were alimony.

Community property is often a going business managed by the husband. It may then be to the best interests of both parties to avoid liquidation of the business by awarding the wife her share of the property in the form of monthly payments. Such a division will be equitable, however, only if those payments are treated, not as alimony, but as part of a property settlement not subject to modification. If, for example, the community property is worth $200,000 and the decree provides that the husband receive all of it and that the wife on the basis of her life expectancy receive $500 per month, and one year after her divorce the wife remarries, it would be manifestly inequitable to hold that the payments were alimony and therefore terminated, for she would then receive only $6,000 in lieu of community property worth at least $100,000. The inequity is just as real if the amount involved is small.

There can be no stability to such property settlements if the court, as in this case, uses defendant's earnings some three years after the decree was entered as a basis for a determination that all the community property was properly awarded to him. A business of great value may still not make a profit. It may be profitable at the time a divorce decree is entered but unprofitable thereafter. When the husband agrees to make monthly payments in lieu of liquidating the business, he assumes the risk that it may not be so profitable or of such

value as he supposed. If the trial court erred in making that choice for him in the divorce decree, his remedy is by appeal. ''A divorce decree adjusting the property rights of the parties is not subject to modification regardless of whether or not it is based upon the agreement of the parties.'' (*Puckett* v. *Puckett*, 21 Cal.2d 833, 840 [136 P.2d 1].)

It is clear from the record that the trial judge concluded that he had erred in awarding plaintiff monthly payments in lieu of her share of the community property and that he sought to correct his error in the modification proceedings. If he made an error, however, it was judicial and not clerical in character. ''The judgment in this case was the identical judgment which the trial court intended to render. There was no mistake in its entry, and it expressed in apt and definite terms the conclusion at which the trial court arrived during the trial of the action. If the court misconstrued the evidence before it, or misapplied the law applicable to the facts disclosed by the evidence, or was even misled by counsel, such an error was in no sense a clerical error which could thereafter be corrected by the court upon its own motion or in any proceeding except on motion for a new trial.'' (*Lankton* v. *Superior Court,* 5 Cal.2d 694, 698 [55 P.2d 1170]; *Stevens* v. *Superior Court,* 7 Cal.2d 110, 112 [59 P.2d 988]; *Estate of Burnett,* 11 Cal.2d 259, 262 [79 P.2d 89]; *Bastajian* v. *Brown,* 19 Cal.2d 209, 214 [120 P.2d 9]; *Barlow* v. *City Council of Inglewood,* 32 Cal.2d 688, 692-693 [197 P.2d 721]; see, 2 McBaine, California Trial and Appellate Practice, pp. 204-214; 9 Wigmore on Evidence [3d ed.] § 2450.) Once the divorce decree became final, the trial judge was powerless to change the amount awarded to plaintiff in lieu of community property, even if he concluded that the amount awarded was excessive. He cannot lawfully do so indirectly by disregarding the community property award and holding the monthly payments to be alimony.

In any event, the award cannot be made to appear excessive unless the dual function of the monthly payments is disregarded. The decree provided, not only for a settlement of property rights, but for the support of the minor children. The amount to be allotted for this support was not specified as it should have been (*cf., Puckett* v. *Puckett,* 21 Cal.2d 833, 841 [136 P.2d 1]; *Hough* v. *Hough,* 26 Cal.2d 605, 615 [160 P.2d 15]; *Adams* v. *Adams,* 29 Cal.2d 621, 625 [177 P.2d 265]), but given the division adopted by the trial court in the modification proceedings, it appears that only one-fourth

of the $140, or $35 per month, can be attributed to the wife's share of the community property. Had the decree provided that defendant was to receive all the community property and plaintiff was to receive $35 per month for her support and maintenance and $105 per month for the support and maintenance of the minor children, there would be no question that the provision for the payment of $35 per month was part of a settlement of the property rights and therefore not subject to modification. (*Hogarty* v. *Hogarty,* 188 Cal. 625, 627 [206 P. 79] ; *Webster* v. *Webster,* 216 Cal. 485, 488 [14 P.2d 522] ; *Puckett* v. *Puckett,* 21 Cal.2d 833, 842 [136 P.2d 1].) It is only when the amounts properly attributable to child support are treated as relevant to the division of the community property that the total award is made to appear too large to be reasonably attributable in part to a division of the community property.

The payments were ordered "as and for the support and maintenance of Plaintiff and the minor children of the parties hereto." In view of the disparity between the total award and an amount appropriate solely for a division of the community property, it would be unreasonable to conclude that it was intended that the total amount continue to be payable after the parental duty of support had terminated. (*Putnam* v. *Putnam,* 51 Cal.App.2d 696, 699 [125 P.2d 525] ; *Meek* v. *Meek,* 51 Cal.App.2d 492, 495 [125 P.2d 117].) Had the decree properly segregated the amounts attributable to child support, there would be no problem in determining what reduction should be made. When the decree is silent on the question of allocation, however, it has been held proper for the trial court to determine the reasonable allocation in subsequent proceedings. (*Putnam* v. *Putnam, supra; Meek* v. *Meek, supra.*) In this case the trial court has determined that $35 per month is the amount attributable to the support of each child. Accordingly, the order should be affirmed to the extent that it reduces the payments attributable to the support of the children by $35 per month in view of the marriage of the eldest child. The unqualified affirmance of the order, which terminates plaintiff's right to receive $35 per month, deprives her of her share of the community property in violation of section 146 of the Civil Code.

Appellant's petition for a rehearing was denied March 27, 1950. Traynor, J., voted for a rehearing.