[Civ. No. 19388.   Second Dist., Div. Three.   Sept. 8, 1953.]

BETTY SASANOFF, Appellant, v. MICHAEL SASANOFF, Respondent.

Joseph Stell and Alex D. Fred for Appellant.

E. Marshall Bitgood for Respondent.

WOOD (Parker), J.—On July 12, 1945, plaintiff (wife) and defendant (husband) entered into a written agreement at the top of which were the words: "Property Settlement Agreement." On September 20, 1945, plaintiff commenced an action for divorce, and in the complaint she alleged that she had entered into a property settlement agreement disposing of their community property, including therein a provision that the defendant shall pay plaintiff $25 per week for her support until her death or remarriage, and shall pay plaintiff $25 per week for support of their minor child. She alleged further, in the complaint, that she would present the agreement for the approval of the court. She asked, in the prayer of the complaint, that the agreement be approved by the court

and that "pursuant to said property settlement agreement" defendant be ordered to pay for her support $25 per week until her death or remarriage.

On November 14, 1945, plaintiff obtained an interlocutory judgment of divorce upon default of defendant. That decree stated: "The property settlement agreement entered into between the parties, dated July 12, 1945, and received in evidence, is hereby approved & so ordered. Pursuant to said agreement, defendant is ordered and directed to pay to plaintiff the sum of $25.00 per week for her support and maintenance until her death or remarriage. . . . Defendant is ordered and directed to pay to plaintiff for the support and maintenance of the minor child of the parties hereto, the sum of $25.00 per week until the further order of the Court. . . ."

In the final judgment entered November 27, 1946, it was ordered that wherein the interlocutory judgment makes any provision for alimony or custody and support of children the said provision is made binding upon the parties, and wherein the interlocutory judgment relates to property of the parties the property is assigned in accordance with the terms thereof.

On September 28, 1951, plaintiff obtained an order requiring defendant to show cause why the order of November 26, 1946 (final judgment entered November 27, 1946) should not be modified—to increase the payments to plaintiff and the minor child (19-year-old boy) to $150 each per week.

A court commissioner, upon a hearing on the order to show cause, sustained defendant's objection to the taking of any evidence on the issue as to "additional alimony," and recommended that the amount payable for the support of the minor be increased to $175 per month. A judge of the court approved the recommendations of the commissioner. Plaintiff made a motion that the court vacate in part the findings and conclusions of the commissioner, and that the court direct a rehearing in part upon the order to show cause, upon the ground that the commissioner refused to permit the introduction of evidence in support of plaintiff's request for modification because the court had no jurisdiction to modify "said alimony by reason of its being pursuant to a Property Settlement Agreement." The court sustained "the objections" to the findings of the commissioner "as to provisions re change of alimony only," and ordered a rehearing "as to modification of alimony."

The court, upon the rehearing, made the following findings and order: "The Court finds that the express provisions of the Property Settlement Agreement that the payments for support agreed to, is in settlement and adjustment of all property rights, and has not been overcome by extrinsic evidence. The Court finds that it has no jurisdiction to modify the decree based upon the Property Settlement Agreement. It is therefore ordered that the application for modification in re support be dismissed."

Plaintiff appeals from the judgment. She contends that the order is contrary to the evidence; that all the factors to be considered in determining the nature of the payments to be made to plaintiff under the divorce decree show that the payments were for "alimony"; and that since the provision in the divorce decree relates to alimony, and not to a property settlement agreement, the provision could be modified.

The property settlement agreement provides, in part, as set forth below.[1] Plaintiff argues that paragraph "(7)" of the agreement (which provides for payments of $25 per week to the wife) indicates that said payments of $25 per week to her are for alimony, since the provision therein for discontinuance of the payments upon her death or remarriage

---

[1] "Whereas . . . the parties are desirous of settling all property claims . . . that either may have against the other, and . . . Whereas, each of the parties . . . in the negotiations . . . resulting in the agreement set forth herein, has respectively retained his or her own separate and independent legal counsel and . . . Whereas, the parties . . . now intend to and do hereby adjust and finally settle . . . all property rights . . . including any and all property in which they may hereafter acquire any interest . . . in any manner whatsoever, and . . . Whereas . . . it is their intention to settle . . . any differences relating to said property, irrespective of the legal status of said property . . . Now, THEREFORE . . . for the purpose of finally settling and adjusting all of the property rights of the parties hereto, it is mutually understood and agreed as follows, to-wit:

"(1) From and after the date hereof, the earnings of said First Party [plaintiff] shall be her sole and separate property.

"(2) . . . the earnings of said Second Party [defendant] shall be his sole and separate property.

"(3) . . . Second Party shall have no right . . . to the household furniture. . . .

"(4) . . . First Party shall have no right . . . to that certain 1941 Chevrolet automobile. . . .

"(5) . . . Second Party shall have no right . . . to the Government bonds. . . .

"(6) . . . each party shall have no right . . . to any moneys now on deposit in any bank to the credit of the other party.

"(7) Second Party agrees that he shall cause to be paid to First Party the total sum of Fifty Dollars ($50.00) per week . . . $25.00 of which said sum shall be for the support and maintenance of the First Party herein, to be paid to her until her death or marriage to some person

is not consonant with a settlement of her property rights. She argues further that since the provisions relating to the support of the child and support of the wife are "intertwined" in the same paragraph those provisions are severable from the provisions relating exclusively to the property rights of the parties; and that since each party received substantially an equal share of the community property, the payments of $25 were intended as a provision for alimony. The total value of the community property was about $2,225. The wife received the furniture of the approximate value of $500, and the government bonds of the approximate value of $525. (Total $1,025.) The husband received the automobile of the approximate value of $500, and the bank account in his name in an amount between $500 and $700. (Total between $1,000 and $1,200.) She argues further that there would have been no need to allege in her complaint that defendant was "able bodied and well able to make the payments provided for" if the payments were in settlement of property rights, and there would have been no need to pray for support money if she had an irrevocable contractual right to the payments.

At the hearing on the order to show cause the plaintiff testified that on July 12, 1945, they entered into a written

---

other than Second Party; and $25.00 of which shall be for the support . . . of the minor child of the parties. . . .

"(8) Second Party agrees to continue in force a certain policy of insurance in the sum of One Thousand Dollars ($1,000.00) on his life. . . . [T]he minor child . . . to be the irrevocable beneficiary of said policy.

"(9) Second Party agrees that he shall cause the sum of Ninety Dollars ($90.00) to be paid to . . . attorney for the First Party . . . on account of attorney's fees and costs. . . .

"(10) First Party agrees that she shall hold Second Party . . . harmless of any and all obligations hereafter incurred by her.

"(11) Second Party agrees that he shall hold First Party . . . harmless of any and all obligations hereafter incurred by him.

"(12) That each of the parties hereto shall . . . retain all personal belongings . . . which each now has. . . .

"(13) It is hereby agreed . . . that the First Party may deal with . . . her own property without the consent of the Second Party; and that the Second Party may deal with . . . his own property without the consent . . . of the First Party.

"(14) The said parties . . . hereby agree that all property of every kind . . . that either may acquire . . . after the date hereof, shall be his or her separate property . . . and they each relinquish their rights of inheritance . . . and any and all rights that they might have had therein under the law, if they had not entered into this agreement. . . .

"(15) Said parties . . . renounce any and all claims and rights to act as executor . . . or personal representative of the estate of the other.

"(16) Said parties agree that it is . . . unnecessary hereafter for either party hereto to join in any deed of conveyance or any instrument

property agreement which was the same as the one hereinabove described, except that the first agreement contained a provision for the payment of a total of $35 per week for her and the child (not $50 per week); at the time when the first agreement was made the defendant was living in the home with the plaintiff and the child; he continued to live there about three weeks, and in addition to paying the $35 per week he paid the rent and the utilities ($47.50 per month for rent and about $15 per month for utilities); when defendant was about to move from the home he said that he was going to move and "so instead of paying the rent for the house, I understand you will need more money"; it was agreed orally that plaintiff would need more money for the support of herself and the child; about three weeks after the original agreement was made he moved from the house, and agreed to pay a total of $50 per week; at that time page 3 of the original agreement (which contained the provision for $35 per week) was changed by counsel for the parties, pursuant to direction of the parties, to read that defendant would pay a total of

which will transfer the fee of any property that may be acquired by either party. . . .

"(17) It is now expressly agreed . . . that the First Party does by these presents reaffirm . . . all deeds . . . and agreements of every kind . . . in the execution of which the said First Party has heretofore joined. . . .

"(18) It is further understood and agreed between the parties hereto that the provisions hereinbefore made for the First Party shall constitute a full and complete satisfaction of all claims and demands of the First Party against the Second Party . . . such as separate maintenance, support, community interest . . . alimony or of any claim or interest of any kind . . . that the said First Party might . . . claim, including any and all claims by virtue of the marital relationship . . . for any and all attorney's fees. . . .

"(19) It is agreed that this contract and agreement is in no sense an agreement by and between the parties for a divorce. . . .

"(20) This agreement is intended to be, and is, a full, complete and final property settlement between the parties hereto, and it is specifically understood that the property rights arising out of the marriage contract, or arising from any other source, have been and now are settled, once and forever, and, therefore, said First Party does by these presents absolutely and forever release and discharge said Second Party . . . from any and every claim . . . and liability . . . from the beginning of the world to the end of time, except as hereinabove . . . provided. It is also specifically understood and agreed that the Second Party does . . . forever release and discharge said First Party . . . from any and every claim . . . and liability . . . from the beginning of the world to the end of time, except as hereinabove . . . provided.

"(21) In the event the parties hereto are divorced hereafter, it is agreed that . . . custody of the minor child . . . shall be granted to the First Party. . . .

"(22) First Party waives any right . . . in that certain real property . . . located at Westboro . . . New York. . . ."

$50 per week—$25 per week for plaintiff and $25 per week for the child; she did not remember whether a new page 3 was substituted for the original page 3 or whether erasures of figures on the original page 3 were made and new figures were written thereon. On the margin of page 3 of the amended agreement there is a statement, signed by the parties, that: "This page supplants page 3 originally in this agreement, and the amount of $50.00 in line 5 and $25.00 in line 9 are correct according to the agreement of the parties."

Defendant testified that he left the home on June 27, 1945; he did not see or talk to or communicate with plaintiff between said date and October 16, 1945 (when summons and complaint were served); he had no conversation with her about paying $50 per week; the negotiations which led up to the making of those payments were conducted by their attorneys; he commenced to make the $50 payments the week after July 12, 1945; he paid by check. On cross-examination he said that he saw plaintiff several times between the time he left and July 12th; he did not remember whether he had been paying $35 per week for household expenses before he entered into said agreement; he did not take plaintiff to a place near Lake Arrowhead to visit their son in July and August, 1945; he did not remember that in July or August, 1945, he, the plaintiff and M. Blum went to Lake Arrowhead to visit the son; he did not recall visiting Mr. Broder at that time at Lake Arrowhead; he did not remember that in August, 1945, he took plaintiff and Mr. and Mrs. Rogeson to dinner at Duffy's Tavern; he did not remember any agreement other than the one for $50 per week; the value of the property in New York was about $280.

Plaintiff testified in rebuttal that in July or August, 1945, she saw defendant on several occasions; one of the occasions was at a dinner at the Gotham with Mr. and Mrs. Rogeson; another occasion was when M. Blum was present at Lake Arrowhead.

The agreement herein is designated by the parties as a property settlement agreement. They state therein that they are desirous of settling all property claims; that they intend thereby to finally settle all their property rights; that for the purpose of finally settling all their property rights they mutually agree "as follows" (as stated in the 22 paragraphs specifying various items of agreement). In paragraph "(7)" defendant agrees to pay plaintiff $25 per week for her support until her death or remarriage. In paragraph "(18)" they

agree that "the provisions hereinbefore made" for plaintiff shall be complete satisfaction of all her claims against him, such as support or alimony. In paragraph " (20) " they agree that the agreement is intended to be and is a complete and final property settlement, and their property rights arising out of the marriage have been settled "forever" and each one forever releases the other from any claim and liability "from the beginning of the world to the end of time." Each party was represented by counsel in the making of the agreement, and each attorney signed his name to the agreement as a witness to the signature of his client. The interlocutory judgment designates the agreement as a property settlement agreement, and approves it, and states that "Pursuant to said agreement, defendant is ordered . . . to pay to plaintiff . . . $25.00 per week for her support. . . ." ■ The fact, however, that an agreement recites that it is a property settlement agreement, or the fact that a divorce decree refers to an agreement as a property settlement agreement, is not necessarily determinative of the question whether a provision therein for periodic payments for support of a wife is an inseparable part of a property settlement agreement, which cannot be modified by the court without consent of the parties; nor is such a recital or reference necessarily determinative of the question whether such provision is a provision for support that is separable from and independent of the provisions for division of property, which can be modified by the court. (See *Puckett* v. *Puckett,* 21 Cal.2d 833, 840-842 [136 P.2d 1].) ■ In the Puckett case, just quoted, it was said at page 842: "The trial court in the interlocutory decree designated the agreement as 'a property settlement agreement.' In the order denying defendant's motion the court found that the divorce decree was made 'pursuant to and as a part of a property settlement agreement.' The presence of the provision that the monthly payments are for the support and maintenance of plaintiff and the child do not necessarily indicate alimony rather than a property settlement. The agreement must be taken as a whole." Also in the Puckett case, it was said (pp. 840 and 841): "In the instant case the agreement was introduced in evidence and was approved by the court. Some of its terms were embodied in the divorce decree. The requirement for monthly payments was expressly based upon the agreement and those were ordered to be made. ■ If the divorce decree together with the agree-

ment upon which it is based may be considered to be an adjustment of property rights only, or what is commonly referred to as a property settlement, it follows that there is in effect no provision in the divorce decree for alimony strictly defined, even though periodic payments must be made. The periodic payments are not alimony. They are a part of a property settlement.'' As stated in the Puckett case (p. 841): ''The essential issue to be determined is whether or not the agreement was a property settlement agreement, and the monthly payments ordered by the decree in effect and essence, a phase of the property settlement rather than merely alimony.'' ■ In *Codorniz* v. *Codorniz*, 34 Cal.2d 811, it was said at page 814 [215 P.2d 32]: ''[I]n modification proceedings the trial court has jurisdiction to determine whether the decree was based upon a property settlement agreement with payments provided as a phase of property adjustment and therefore not subject to modification or was based upon alimony or support allowance covenants and therefore subject to modification.'' ■ It was the duty of the trial court in the present case to determine whether or not alimony had been awarded. (See *Tuttle* v. *Tuttle*, 38 Cal.2d 419, 422 [240 P.2d 587].) ■ The court herein received testimony of plaintiff and defendant regarding the circumstances under which the agreement was made. The determination of the trial court, if supported by sufficient evidence, is binding upon this court. (See *Codorniz* v. *Codorniz*, *supra*, pp. 814-815.) The finding of the court to the effect that the provision in the decree for payments to plaintiff was based upon the property settlement agreement is supported by the evidence. In view of the various declarations in the agreement herein to the effect that the agreement is a final settlement of property rights and all claims of each party against the other, it does not seem likely that, if the defendant had sought to reduce the amount of the payments, the plaintiff would have asserted that the provision in the decree for payments to her was a provision for alimony which could be modified.

■ Appellant (plaintiff) contends further that the court erred in refusing to permit plaintiff to call witnesses to rebut testimony of defendant to the effect that in July or August, 1945, he did not see plaintiff or accompany her and others to Lake Arrowhead and to Duffy's Tavern. After plaintiff had testified, plaintiff's counsel requested permission to call four other witnesses (Mr. and Mrs. Rogeson, M. Blum, and Mr. Broder) to rebut said testimony of defendant. The court,

in denying the request, stated that counsel for plaintiff knew what the situation was when the agreement as to time (required for the hearing) was made. It does not appear that the witnesses were in court or available to be called as witnesses when the request was made. Also, it is to be noted that the testimony of defendant, with respect to accompanying plaintiff and the persons mentioned, was to the effect that he did not remember that he had accompanied them. It cannot be said that the court abused its discretion in denying the request.

The order is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 5, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.