[L. A. No. 22305. In Bank. Jan. 8, 1954.]

LILIANE CARRE FLYNN, Respondent, v. ERROL
LESLIE FLYNN, Appellant.

Jerry Giesler and Robert E. Ford for Appellant.

Loeb & Loeb, Herman F. Selvin and Harry L. Gershon for Respondent.

TRAYNOR, J.—On October 11, 1941, plaintiff Liliane Carre Flynn and her husband, defendant Errol Flynn, executed a separation agreement providing for a division of their community property and the support and maintenance of plaintiff and the minor child of the parties. The agreement also provided that in any action for divorce brought by either party "this agreement may be approved by [the] court and that the terms and provisions hereof may be made and become a part of and incorporated in any decree which may be made by such court, and the parties ordered to comply with the provisions hereof." In 1942, plaintiff was awarded a divorce from defendant, and the interlocutory decree provided that "The property settlement agreement between the parties hereto dated October 11, 1941 and received in evidence herein, is hereby ratified, approved and confirmed and the same is hereby specifically incorporated herein and made a part of this decree, and defendant is hereby ordered to make all of the payments provided therein to be paid by him, at the times and in the manner therein provided, and plaintiff and defendant are hereby ordered to comply in all respects with each and all of the terms and provisions of said agreement and to perform all their obligations thereunder as therein provided." The final judgment incorporated the foregoing provision of the interlocutory decree by reference.

In 1950 defendant petitioned the court to order a reduction in the monthly payments provided in the agreement on the ground of changed circumstances. In October, 1951, the court entered its order denying defendant's motion on the ground that it lacked jurisdiction to modify the interlocutory decree because the property settlement agreement was incorporated by reference only. Defendant has appealed.

Defendant contends that the quoted provision of the interlocutory decree merged the agreement into the decree and that therefore the court had continuing jurisdiction under section 139 of the Civil Code to modify the provisions for support and maintenance. Plaintiff contends, on the other hand, that since the agreement was incorporated by reference

only, a merger did not occur, and that in any event modification was precluded by the terms of the agreement.

Merger is the substitution of rights and duties under the judgment or the decree for those under the agreement or cause of action sued upon. (See Rest., Judgments, § 47, Comment a; *Hough* v. *Hough,* 26 Cal.2d 605, 610 [160 P.2d 15]; *Timm* v. *McCartney,* 30 Cal.App.2d 241, 248 [85 P.2d 920].) The question as to what extent, if any, a merger has occurred, when a separation agreement has been presented to the court in a divorce action, arises in various situations. Thus, it may be necessary to determine whether or not contempt will lie to enforce the agreement, whether or not other judgment remedies, such as execution or a suit on the judgment, are available, whether or not an action may still be maintained on the agreement itself, and whether or not there is an order of the court that may be modified under the provisions of section 139 of the Civil Code.

In any of these situations it is first necessary to determine whether the parties and the court intended a merger. If the agreement is expressly set out in the decree, and the court orders that it be performed, it is clear that a merger is intended. (*Plummer* v. *Superior Court,* 20 Cal.2d 158, 165 [124 P.2d 5]; *Lazar* v. *Superior Court,* 16 Cal.2d 617, 620 [107 P.2d 249].) On the other hand, the parties may intend only to have the validity of the agreement established, and not to have it become a part of the decree enforceable as such. (See *Plummer* v. *Superior Court,* 20 Cal.2d 158, 164 [124 P.2d 5]; *Howarth* v. *Howarth,* 81 Cal.App.2d 266, 272 [183 P.2d 670]; *Baxter* v. *Baxter,* 3 Cal.App.2d 676, 685 [40 P.2d 536]; *Schnerr* v. *Schnerr,* 128 Cal.App. 363, 368 [17 P.2d 749].) Whether or not a merger is intended, the agreement may be incorporated into the decree either expressly or by reference. If a merger is not intended, the purpose of incorporation will be only to identify the agreement so as to render its validity res judicata in any subsequent action based upon it. (*Howarth* v. *Howarth,* 81 Cal.App.2d 266, 272 [183 P.2d 670]; *Baxter* v. *Baxter,* 3 Cal.App.2d 676, 685 [40 P.2d 536]; see *Queen* v. *Queen,* 44 Cal.App.2d 475, 479, 482 [112 P.2d 755].) If a merger is intended, the purpose of incorporation is, of course, to make the agreement an operative part of the decree.

In the absence of an express order to perform all or part of the agreement, it may be difficult to determine whether or not a merger was intended. (See *Plummer* v. *Superior*

*Court,* 20 Cal.2d 158, 165 [124 P.2d 5]; *Lazar* v. *Superior Court,* 16 Cal.2d 617, 620 [107 P.2d 249]; 1 Armstrong, California Family Law, pp. 423-427; *cf., Kent* v. *Superior Court,* 106 Cal.App.2d 593, 595-596 [235 P.2d 420]; *Young* v. *Superior Court,* 105 Cal.App.2d 65, 66-67 [233 P.2d 39]; *Shogren* v. *Superior Court,* 93 Cal.App.2d 356, 364 [209 P.2d 108].) In the present case, however, there can be no doubt as to the intent of the parties and the court that a merger should occur. Thus, the decree provided that the agreement "is hereby specifically incorporated herein and made a part of this decree, and defendant is hereby ordered to make all of the payments provided therein to be paid by him. . . ."

Once it is determined that a merger was intended, it is necessary to decide whether the decree has the requisite formalities to permit its enforcement in place of the agreement it was intended to supersede. ■ It is settled that a document may be incorporated either expressly or by apt reference into a judgment or decree so as to make it an operative part of the order of the court. (*Federal Farm Mtg. Corp.* v. *Sandberg,* 35 Cal.2d 1, 3 [215 P.2d 721]; *Title Ins. Co.* v. *Miller & Lux, Inc.,* 183 Cal. 71, 89, 90 [190 P. 433]; *Horton* v. *Winbigler,* 175 Cal. 149, 158-159 [165 P. 423]; *Hogue* v. *Fanning,* 73 Cal. 54, 57 [14 P. 560]; *Kelly* v. *McKibben,* 54 Cal. 192, 193-194; *Kittle* v. *Lang,* 107 Cal.App.2d 604, 612 [237 P.2d 673]; *Petry* v. *Superior Court,* 46 Cal.App.2d 756, 760 [116 P.2d 954]; *Ex parte Weiler,* 106 Cal.App. 485, 488 [289 P. 645].) ■ Plaintiff contends, however, that a document may not effectively be incorporated by reference unless it is part of the permanent records of the court. She points out that since in this case the agreement was merely introduced in evidence as an exhibit, it could be withdrawn or destroyed, and that therefore interested parties could not by searching the records of the court "construct a complete picture of the rights and obligations of the parties." (See *Price* v. *Price,* 85 Cal.App.2d 732, 735 [194 P.2d 101].) These considerations may justify modifying the interlocutory decree on appeal to require that the agreement be attached to the decree. We do not believe, however, that they are sufficient to require us to hold that the decree, now final, is insufficient to effect its clearly stated intent.

It is unnecessary to decide whether the fact that the agreement was incorporated by reference only prevents its enforcement by contempt proceedings. (See *Shogren* v. *Superior Court,* 93 Cal.App.2d 356, 364 [209 P.2d 108]; *cf., City of*

*Vernon* v. *Superior Court,* 38 Cal.2d 509, 513-514 [241 P.2d 243].) Greater certainty and clarity may be required to support such proceedings than are necessary to support other judgment remedies or establish the agreement as part of the order of the court for modification purposes. (See *Plummer* v. *Superior Court,* 20 Cal.2d 158, 164-165 [124 P.2d 5] ; 39 Cal.L.Rev. 250, 252.) Moreover, we are not here concerned with the rights of third parties who may have dealt with plaintiff or defendant with respect to the specific property covered by the agreement in ignorance of its terms. We are concerned only with the provisions of the agreement providing for monthly payments in litigation between the parties themselves. Under these circumstances, the necessity of referring to an extrinsic document presents no insuperable barrier to giving effect to the decree, as is demonstrated by the many cases where the court in modification proceedings has taken extrinsic evidence to determine whether the provision for monthly payments was one for alimony subject to modification or part of a property settlement not subject to modification. (See, e. g., *Tuttle* v. *Tuttle,* 38 Cal.2d 419, 420-422 [240 P.2d 587] ; *Codorniz* v. *Codorniz,* 34 Cal.2d 811, 815 [215 P.2d 32].) Thus, in cases in which it is difficult or impossible accurately to determine from the permanent records of the court alone the intended character of the payments involved, courts do not hesitate to consider all of the admissible extrinsic evidence correctly to interpret their decrees. Certainly no greater difficulties are presented by permitting reference to an extrinsic document to give effect to the clearly expressed intent of the decree. Thus in this case, the decree may be given its intended effect by referring to an adequately identified document, and the fact that the document is not a part of the permanent records of the court does not vitiate the decree. (*Goatman* v. *Fuller,* 191 Cal. 245, 251 [216 P. 35] ; *De Sepulveda* v. *Baugh,* 74 Cal. 468, 474 [16 P. 223, 5 Am.St.Rep. 455] ; *Kittle* v. *Lang,* 107 Cal.App.2d 604, 612 [237 P.2d 673] ; *McLean* v. *Ladewig,* 2 Cal.App.2d 21, 25-26 [37 P.2d 502] ; see, also, *Newport* v. *Hatton,* 195 Cal. 132, 156 [231 P. 987] ; *Rosenthal* v. *Matthews,* 100 Cal. 81, 83 [34 P. 624].) *Price* v. *Price,* 85 Cal.App.2d 732 [194 P.2d 101], is contrary to the foregoing authorities and is disapproved.

 An examination of the property settlement incorporated by reference in the interlocutory decree makes clear that it is an integrated bargain of the type considered in *Dexter* v.

*Dexter, ante,* p. 36 [265 P.2d 873], and *Fox* v. *Fox, ante,* p. 49 [265 P.2d 881]. Accordingly, the provision for monthly payments may not be modified contrary to its terms. ██ The agreement provides that defendant shall make payments totaling $18,000 per year or 10 per cent of his gross income as therein defined, whichever is less. In no event, however, is he to pay less than $9,000 per year unless his gross income falls below the sum of $90,000 per year and so continues for a period of one year or more, for any reason except his wilful refusal or neglect to seek, obtain or accept employment. If his income does fall below $90,000 per year for other than the excepted reasons and so continues for a year or more, the agreement provides that he may petition the court in the divorce action to reduce the payments until his income again rises to $90,000 a year or more. Since the parties have provided that the court may modify the payments ordered pursuant to the terms of their agreement, the court has jurisdiction to do so in accordance with the agreement. (*Miller* v. *Superior Court,* 9 Cal.2d 733, 740 [72 P.2d 868]; *Hogarty* v. *Hogarty,* 188 Cal. 625, 628 [206 P. 79]; see *Fox* v. *Fox, ante,* p. 49 [265 P.2d 881].) At the time the order was entered in this case, however, the record indicates that, although defendant had been unable to work for several months, his income had not remained below $90,000 for one year, and therefore an order reducing the payments would have been improper. He may renew his motion for a reduction in the monthly payments in accordance with the terms of the property settlement agreement any time the facts so justify.

The order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

SCHAUER, J.—I concur in the judgment. I do not agree that by the mere fiat of a declaration in a judgment, when upon the face of the judgment itself the falsity of the declaration is manifest, this court or anyone else is bound, or even entitled, to accept the falsity as verity.

The statement in the decree in this case that "The property settlement agreement between the parties hereto . . . is hereby specifically incorporated herein and made a part of this decree" undoubtedly was intended to be verity but the most casual inspection of the entire judgment (or the judgment

roll) discloses that in truth the agreement is *not* "incorporated" therein or "made a part" thereof. "In no case is a judgment effectual for any purpose until entered." (Code Civ. Proc., § 664.) To enter a judgment means to copy it in the "judgment book" so that it becomes a permanent and public record (see Code Civ. Proc., § 668), so that he who reads may know its content. Any portion of a judgment not entered in the judgment book would be ineffectual for any purpose. If the clerk by error omitted to enter any part of a judgment which had been filed, the error of the ministerial officer could be corrected; but if he has performed his duty and the judgment as entered is truly the judgment as rendered, and that judgment has become final, then neither this court nor any other court or person has power to add words to the language of that judgment.

Neither do I agree with implications in the majority opinion that a court may arbitrarily disregard the whole or any portion of a property settlement agreement which has been fairly executed. Husband and wife are competent to contract with each other in respect to property rights to the same extent "which either might if unmarried." (Civ. Code, §§ 158, 159.) When divorce is contemplated, public policy favors the settlement of property rights by agreement. The most basic rules governing freedom to contract and the integrity of contracts require that agreements between competent parties, fairly entered into and with a good consideration, be respected.

The trial court correctly denied defendant's motion.

CARTER, J., Concurring and Dissenting.—I concur in the affirmance of the order, but dissent as to some of the reasoning set forth in the majority opinion.

In the case at bar, the interlocutory decree provided that "The property settlement agreement between the parties hereto dated October 11, 1941, and received in evidence herein, is hereby ratified, approved and confirmed and the same is hereby specifically incorporated herein and made a part of this decree, and defendant is hereby ordered to make all of the payments provided therein to be paid by him, at the times and in the manner therein provided, and plaintiff and defendant are hereby ordered to comply in all respects with each and all of the terms and provisions of said agreement and to perform all their obligations thereunder as therein provided." This provision of the interlocutory decree was

incorporated in the final judgment by reference. In the majority opinion it is held that the agreement entered into between the parties was an integrated property settlement agreement which could not be modified by the court in the absence of another agreement between the parties. With this holding I agree. I do not agree that the paragraph above quoted is sufficient to merge the agreement into the interlocutory decree of divorce.

I am also of the opinion that if the decree does not embody the agreement either in substance or *in haec verba,* it is not an operative part of it and may not be enforced as a part of the decree. This is true even though the agreement may have been introduced in evidence and approved by the court. If the agreement is merely introduced in evidence as an exhibit, as it undoubtedly was here, it could be withdrawn or destroyed and interested parties could not, by searching the records of the court "construct a complete picture of the rights and obligations of the parties" (*Price* v. *Price,* 85 Cal.App.2d 732, 735 [194 P.2d 101]).

In *Howarth* v. *Howarth,* 81 Cal.App.2d 266 [183 P.2d 670], the question was whether an action for support money would lie on an agreement for support where the court granting the divorce decree (Utah) approved the agreement but did not embody it in the decree. It was held that an action would lie on the agreement but not the decree. (See, also, *Taylor* v. *Taylor,* 39 Cal.App.2d 518 [103 P.2d 575]; *Robertson* v. *Robertson,* 34 Cal.App.2d 113 [93 P.2d 175]; *Ross* v. *Ross,* 1 Cal.2d 368 [35 P.2d 316].) It should be obvious that where the agreement has not been properly embodied in the decree but the court purports to order performance of it and makes no other provision for support or division of property, it either has not passed upon the questions of support, or has, in effect, denied alimony. Indeed, where a decree has made no provision for alimony, the court cannot later modify it to provide for alimony. This is true unless the court in some authorized manner has reserved jurisdiction to do so. (*Estate of Brooks,* 28 Cal.2d 748 [171 P.2d 724]; *Monroe* v. *Superior Court,* 28 Cal.2d 427 [170 P.2d 473]; *Long* v. *Long,* 17 Cal.2d 409 [110 P.2d 383]; *O'Brien* v. *O'Brien,* 130 Cal. 409 [62 P. 598]; *Howell* v. *Howell,* 104 Cal. 45 [37 P. 770, 43 Am.St.Rep. 70].) The mere confirmation or approval of the agreement without embodying it in the decree, at most, determines that the agreement is valid and may be enforced in a separate action between the parties. (*Price* v. *Price,* 85 Cal.App.2d

732 [194 P.2d 101].) If the agreement is an integrated property settlement agreement, or if it is a valid agreement entered into between the spouses for the support and maintenance of one of them, it may not, even if embodied in the decree, be modified without the consent of both parties. (See *Fox* v. *Fox, ante,* p. 49 [265 P.2d 881]; *Dexter* v. *Dexter, ante,* p. 36 [265 P.2d 873].)

A separation agreement, whether it involves property rights or support allowances, or both, has not been embodied in the decree for the purpose of merger, or enforcement by contempt proceedings unless it is set forth in full, or in substance, in the decree itself or is physically attached to the decree and expressly made a part thereof by the language of the decree and compliance with its terms is ordered by the decree. As was said in *Price* v. *Price, supra*: ". . . there is a difference for if there is an actual *incorporation* of the agreement into the decree, the decree standing alone then carries within itself the complete measure of the rights and obligations of the parties. In the court's files, the decree or judgment itself supplies all the information necessary to whomsoever may be interested. If recorded it announces to the world the respective interests of the parties in any property involved.

"If on the other hand the agreement is *made a part of the decree by reference* only the above is not true. One searching the file could not construct a complete picture of the rights and obligations of the parties from the decree or judgment alone. Reference might be to an exhibit attached to a *pleading*, to another judgment, or even to an agreement offered in evidence and withdrawn and not available as a part of any public record. In such a case it would not follow that the value attaching to such an unincorporated document would be 'only historical.' It or a true copy thereof would of necessity have to be sought out and produced in order to determine what the complete judgment actually provided. If it could not be produced, or its terms definitely established, then that part of the judgment represented by it could not be enforced. In particular it could not be enforced by contempt proceedings." (Emphasis added.) In the majority opinion, it is said that the Price case, being contrary to the following authorities (*Goatman* v. *Fuller,* 191 Cal. 245, 251 [216 P. 35]; *De Sepulveda* v. *Baugh,* 74 Cal. 468, 474 [16 P. 223, 5 Am. St.Rep. 455]; *Kittle* v. *Lang,* 107 Cal.App.2d 604, 612 [237 P.2d 673]; *McLean* v. *Ladewig,* 2 Cal.App.2d 21, 25-26 [37 P.2d 502]; *Newport* v. *Hatton,* 195 Cal. 132, 156 [231 P.

987]; *Rosenthal* v. *Matthews,* 100 Cal. 81, 83 [34 P. 624]), is disapproved.

In *Goatman* v. *Fuller, supra,* an erroneous description of certain real property involved in a lease was carried over into the findings and judgment in an action on the lease. The trial court granted plaintiff's motion to amend the complaint, findings and judgment *nunc pro tunc* to give the correct description. The court there said: "Moreover, it is not questioned that the description of the land originally contained in the judgment is erroneous. Therefore, the only effect of a reversal of the order would be to remit respondents to an action in equity, in which they clearly would be entitled to have the judgment amended. (*Young* v. *Fink,* 119 Cal. 107 [50 Pac. 1060]; *In re McGrew, supra* [183 Cal. 177 (190 P. 804)].) To obviate any such further proceedings, let the order be affirmed."

In *De Sepulveda* v. *Baugh, supra,* a quiet title action was involved. A certain tract was described by metes and bounds with an exception which was described as being recorded in certain numbered books, on certain numbered pages, in the records of Los Angeles County. The court there held that while the description was not an "ideal" one, it was not uncertain or doubtful and that the judgment was not "void." The reference here was to public records.

In *Newport* v. *Hatton, supra,* an action to establish the right of plaintiffs in certain land and to the proceeds of the sale thereof was involved. The question was which 75 acres of the south half of a certain quarter section was involved. There the court refused to declare the judgment a nullity because of the defective description and said that whether or not the description was defective must be tested by rules of evidence applied ordinarily to the subject.

In *Rosenthal* v. *Matthews, supra,* another description of land was involved. The complaint definitely and correctly described the premises; the judgment described it correctly but excepted from its effect certain parts of the land "as were sown to grain by the defendant during the fall of 1890 and the winter of 1891." The court held that the land could be identified by extraneous evidence "as in cases of the removal or destruction of stakes or other monuments called for in deeds and patents."

In *McLean* v. *Ladewig, supra,* a quiet title action was involved. It was held there that when property is well de-

scribed by name, a conveyance by that designation is sufficient and a subsequent particular description could not be held to be used in the sense of restriction.

In *Kittle* v. *Lang, supra,* it was said: "It is true that findings, as well as the judgment based thereon, should be definite and certain. At least they should be sufficiently clear and definite to enable a party to comply with their requirements. . . . The judgment here involved is merely an order to the defendant to turn over to plaintiff such part of the personal property assets of the partnership now in defendant's possession as are described in Exhibit I, which exhibit is made a part of the findings and judgment by reference. Defendant admitted he still had in his possession much of this equipment but claimed title to it under the terms of the quitclaim deed, which deed the court found was ineffective as to this particular personal property.

"As between the parties to this action, we believe the findings and judgment, in this respect, are sufficiently clear and definite to enable defendant to comply with its requirements."

It is quite apparent that the Kittle case is the only one of these at all like the case at bar or the Price case which has been erroneously disapproved. In all the others, defective descriptions of real property were involved and, in all of them, it was possible to make certain the deficiency. In a divorce action where the property settlement agreement of the parties is not sufficiently incorporated into the interlocutory and final decrees, an action may still be brought on the *agreement* itself but, in my opinion, may not be brought to enforce the judgment because there is nothing in the judgment to enforce. It is also apparent that a majority of this court really believes that the agreement was insufficiently incorporated in the decree, for they say: "These considerations may justify modifying the interlocutory decree on appeal to require that the agreement be attached to the decree. We do not believe, however, that they are sufficient to require us to hold that the decree, now final, is insufficient to effect its clearly stated intent."

This case adds a great deal to the confusion which has heretofore existed as to what constitutes an incorporation. To say that the facts here present a sufficient incorporation and then to say that the interlocutory decree, which is now final, may be *modified on appeal to require attachment of the agreement* thereto is the height of absurdity. It also is an effective trap designed to catch both wary and unwary attor-

neys who are trying to honestly and conscientiously protect their clients' interests. Under the holding here, it is absolutely impossible for attorneys to know whether this court will, years later, determine that there was an incorporation, or *order* one whether or not it was intended at the time of the interlocutory decree.

In my opinion there was no incorporation here.

The proper rule and the rule which should prevail is that a valid agreement between husband and wife fixing the right of support or alimony following divorce, even though it is not integrated with a property settlement, cannot be altered by the court in the ensuing divorce action, or, if incorporated in the decree, the latter may not be modified, unless the agreement so provides. Such an agreement may, of course, be disregarded if it is tainted with fraud or there is overreaching. However, after merger in the decree, the decree is not subject to modification except to the extent that ordinary judgments are subject to attack. This is the logical result which flows from *Adams* v. *Adams,* 29 Cal.2d 621 [177 P.2d 265]. We there held that separation agreements in which the support and maintenance provisions are so interwoven that they constitute a part of a division of the property of the parties, and thus not in the nature of alimony, are not subject to modification either before or after merger except as mentioned in the above stated rule. It was said in the Adams case (p. 624) that: ''Property settlement agreements occupy a favored position in the law of this state and are sanctioned by the Civil Code. (*Hill* v. *Hill,* 23 Cal.2d 82, 89 [142 P.2d 417] ; *Hensley* v. *Hensley,* 179 Cal. 284, 287 [183 P. 445] ; Civ. Code, §§ 158, 159.) Such agreements are usually made with the advice of counsel after careful negotiations, and the courts, in accord with legislative sanction, prefer agreement rather than litigation. (*Hill* v. *Hill, supra* at p. 89.) When the parties have finally agreed upon the division of their property, the courts are loath to disturb their agreement except for equitable considerations. A property settlement agreement, therefore, that is not tainted by fraud or compulsion or is not in violation of the confidential relationship of the parties is valid and binding on the court. (*Hough* v. *Hough,* 26 Cal.2d 605, 614 [160 P.2d 15] ; *Estate of Belknap,* 66 Cal.App.2d 644, 651-652 [152 P.2d 657] ; *Baxter* v. *Baxter,* 3 Cal.App.2d 676, 681 [40 P.2d 536] ; *Brown* v. *Brown,* 83 Cal.App. 74, 82 [256 P. 595] ; *McCahan* v. *McCahan,* 47 Cal. App. 176, 183 [190 P. 460].)

". . . The contract may even provide solely for support and maintenance without reference to a division of property. These contracts, if equitable, are enforceable even though not presented to the court in a divorce action." Those principles were stated as to "property settlement agreements," yet they are equally applicable to agreements for alimony. It is true that agreements settling property rights are specifically authorized by the statute but the same is also true as to agreements for alimony. Section 158 of the Civil Code provides that: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried." Section 159 reads: "A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and *except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them* and of their children during such separation." (Emphasis added.) And further indicating the propriety of such agreements, section 175 provides: "A husband abandoned by his wife is not liable for her support until she offers to return, unless she was justified, by his misconduct, in abandoning him; nor is he liable for her support when she is living separate from him, by agreement, unless such support is stipulated in the agreement." Such agreements are enforceable and binding upon the parties, if equitable, even though not presented to the court in the divorce action. (*Adams* v. *Adams, supra,* 29 Cal.2d 621, 624; *Sanborn* v. *Sanborn,* 3 Cal.App.2d 437 [39 P.2d 830]; *Brown* v. *Brown,* 83 Cal.App. 74 [256 P. 595].)

There are cases that hold or state that the incorporation of a support agreement in the divorce decree does not prevent the modification of the decree. (See *Adams* v. *Adams, supra,* 29 Cal.2d 621; *Hough* v. *Hough, supra,* 26 Cal.2d 605; *Puckett* v. *Puckett,* 21 Cal.2d 833 [136 P.2d 1]; and cases cited in those cases.) Those cases are based on the theory that the court in an action for divorce has general power over alimony and that such power cannot be taken away by agreement of the parties as to alimony either when considering the question in the divorce action, or in considering the question of modification of the decree, where the agreement has been incorporated in the decree, because it has power to determine fault upon which an award of alimony may depend (Civ. Code, § 139); and that there is a public policy against the possibility that the care of the spouse will become a public charge

where the agreement does not make adequate provision. In regard to permanent alimony, section 139 of the Civil Code provides that when the divorce is granted for an offense of the husband, the court "may" provide for the wife's support by him and "may" modify its orders on that subject. The court "may" require the payment of temporary alimony— support during the pendency of the action. (Civ. Code, § 137.) It will be noted that the authority of the court is stated in permissive rather than mandatory language. The wording does not exclude the propriety of the parties contracting on the subject or the court being bound by the contract. Those sections must be read in conjunction with section 159, *supra,* which expressly authorizes those contracts. It is not to be supposed that the Legislature would expressly authorize those contracts and at the same time leave it to the whim or caprice of the divorce court whether any effect was to be given to them. The right of freedom of contract given by section 159, *supra,* certainly eliminates any argument that a married woman is not competent to contract or that she needs any protection by the court that is not afforded to other contracting parties. Moreover, it must be noted that the court in the divorce action is given the authority to divide the community property of the spouses according to various fault factors (Civ. Code, § 146, which provides that community property "shall" be assigned as there set forth), yet it is held by a legion of cases that a contract dividing such property when presented to the court in the divorce action is *binding* on the court. (*Adams* v. *Adams, supra,* 29 Cal.2d 621, and cases cited *supra.*) The same construction should be given to sections 137 and 139 of the Civil Code. It is true that nothing is said in section 146, as there is in section 139, about modifying the property division orders of the court, which is understandable because that is done by one act and does not involve the doing of a series of acts in the future like monthly payments for support, and I am referring to the holdings that the property division *contract* is binding on the court *when presented* in the divorce action. The fact that the code sections authorize giving consideration to fault of the parties in the award of alimony requires no different result because the same is true of a community property division, and as the parties are free to contract as to support (Civ. Code, § 159, *supra*), they may in their negotiations give consideration to that factor. I would hold, therefore, that there is nothing in the Civil Code sections discussed which

prevents giving effect to a purely support contract, nor which makes the decree subject to modification when the contract is merged therein.

The policy factors are not persuasive. The statute (Civ. Code, § 159) expressly declares the policy that the parties may contract on this subject. If they may, effect should be given to their contracts. Being fully advised, they have made their choice on the question of support. Having made the arrangement, they are entitled to have it be given stability in order that each may arrange his future affairs with some degree of certainty. If future contingencies might alter the situation they may provide for them in their contracts. Indeed, terms in the contract giving flexibility to it would be desirable and easily achieved. Courts do not make new contracts or disregard contracts which the parties have made on a subject concerning which they may lawfully contract. (6 Cal. Jur. 326 et seq.)

Of course, the parties need not contract unless they desire to do so. They may leave the determination to the court. If they do contract but do not present it to the court in the action and the court makes a determination on the subject of support, then they have waived the contract as fixing their rights and obligations; the decree then is the measure of their rights and duties. If the contract is presented to the court and is approved but not embodied in the decree as heretofore described, then their remedy is on the contract and not the decree. Such is the case at bar.