[Civ. No. 19246.   Second Dist., Div. Two.   Apr. 10, 1953.]

ELIZABETH K. LANE, Respondent, v. BRADFORD F. LANE, Appellant.

G. L. Berrey for Appellant.

J. Q. Gilchrist for Respondent.

FOX, J.—Upon a hearing of an order to show cause *re* modification of an interlocutory decree of divorce, defendant was required to pay plaintiff $200 per month for her support until the further order of the court. Defendant appeals.

Plaintiff filed suit for divorce on January 3, 1949, charging defendant with extreme cruelty. They were married in July, 1932, and separated in December, 1945. There were no children. Plaintiff attached to her complaint as an exhibit, and by reference made it a part thereof, a copy of "a property settlement agreement . . . dividing their community property and providing for the support of plaintiff," according to her allegation. She prayed (1) for a decree of divorce; (2) that "the said property settlement agreement and agreement for the support of said plaintiff be confirmed, ratified and approved;" and (3) for general relief. The agreement was dated January 3, 1949; it recited that the parties desired "to settle all questions as to their respective property rights between themselves, and have been fully and independently advised by their respective counsel in regard thereto." It provided for the sale of the home and furniture and the equal division of the net proceeds. The husband kept the 1940 Chrysler sedan and 69 shares of the capital stock of Bank of America, and agreed to pay the wife $1,750, with interest at 5 per cent, out of his share of the proceeds of the sale of the house and furniture, but in any event within six months, whether said property was sold or not. He also bound himself, "his estate, his heirs, executors and administrators" to pay the wife the sum of $150 on the third day of each month thereafter, commencing with the date of the agreement, for a period of three years from date, or until she remarried. There was no characterization of these payments.

The wife agreed "to accept the said several sums of $150.00 per month . . . for the next three years, or until her remarriage, together with the other real and personal property as herein set forth as and for and in full of her right and claim in and to any interest in the community property of herself and the First Party, as well as in full of her right and claim to alimony, support and maintenance from the First Party; . . . " The agreement further provided that in case the wife filed suit to collect any of the monthly or other payments due her the husband would pay a reasonable attorney's fee. There was no provision in the agreement that it be submitted for court approval in the event of a suit for divorce.

Defendant appeared in the action but did not file an answer. He did, however, stipulate that "his default might be taken" and the matter be heard "as a default." An interlocutory decree of divorce was granted plaintiff in due course. It approved the agreement of the parties, designating it as a "property settlement," and by reference incorporated all of its terms and provisions in the judgment. It did not, however, contain any order requiring defendant to perform said agreement, nor did it contain any order directing him to make any payments whatever to plaintiff. The final decree made no change in these particulars.

Defendant has made each of the $150 monthly payments provided for in the agreement, the last being made on December 3, 1951. On December 28, 1951, less than a week prior to the expiration of the three-year period from the date of the agreement, plaintiff caused the issuance of an order to show cause, the hearing on which resulted in the order here on appeal.

Defendant attacks the order on the ground that the trial court lacked jurisdiction to modify the interlocutory decree. His contention is that the agreement he made with the plaintiff constituted a settlement of their property rights, and that the payments therein specified were not in the nature of alimony. His position must be sustained.

■ Property settlement agreements are sanctioned by the Civil Code (§§ 158, 159) and occupy a favored position in the law. Such agreements are usually made, as in this case, with the advice of counsel after careful negotiations. The courts prefer agreement in such matters rather than litigation. (*Hill* v. *Hill*, 23 Cal.2d 82, 89 [142 P.2d 417].) When the parties have agreed upon the settlement of their property rights the courts are loath to disturb their agreement except for equitable consideration. A property settlement agreement, therefore, not tainted by fraud or compulsion and not in violation of the confidential relationship of the parties, is valid and binding. (*Adams* v. *Adams*, 29 Cal.2d 621, 624 [177 P.2d 265].) ■ When it appears that it was the intention of the parties to definitely, fully and permanently adjust and settle their property rights and obligations and a provision for monthly payments is a part of such plan and constitutes an integral and important element in the amicable adjustment of the property rights of the parties which has judicial approval, the court is without power thereafter to modify the decree. (*Hamilton* v. *Hamilton*, 94 Cal.App.2d

293, 295 [210 P.2d 750] ; *Puckett* v. *Puckett,* 21 Cal.2d 833, 840 [136 P.2d 1] ; *Ettlinger* v. *Ettlinger,* 3 Cal.2d 172, 178 [44 P.2d 540].)

Where, as here, there was no extrinsic evidence relative to the agreement or its execution its construction is purely a question of law. Under such circumstances a reviewing court is not bound by the construction thereof by the trial court but must make final determination in accordance with the applicable principles of law. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825] ; *Western Coal & Min. Co.* v. *Jones,* 27 Cal.2d 819, 827 [167 P.2d 719, 164 A.L.R. 685] ; *LaLumia* v. *Northern Calif. Packing Co.,* 75 Cal.App.2d 917, 922 [172 P.2d 94] ; *Clark* v. *Tide Water Associated Oil Co.,* 98 Cal.App.2d 488, 490 [220 P.2d 628].) In interpreting an agreement, of course, it must be considered in its entirety. (*Streeter* v. *Streeter,* 67 Cal.App.2d 138, 143 [153 P.2d 441] ; *Puckett* v. *Puckett, supra.*) An interlocutory decree of divorce is, so far as it determines the rights of the parties, a contract between them (*London G. & A. Co.* v. *Industrial Acc. Com.,* 181 Cal. 460, 465 [184 P. 864] ; *Taylor* v. *George,* 34 Cal. 2d 552, 557-558 [212 P.2d 505] ), and "[t]he interpretation of such a decree is a question of law." (*Becker* v. *Becker,* 36 Cal. 2d 324, 326 [223 P.2d 479].)

We are satisfied from an examination of the agreement that it was the intention of the parties to completely settle all of their property rights and obligations to each other. The agreement stated at the outset that the parties desired to settle *all* questions as to their respective property rights. They then provided for the disposition of their home and furniture, the automobile, and the bank stock. Thus all the community property is disposed of. Then follows the provision whereby defendant agreed to pay to plaintiff $150 a month for a period of three years, or until she remarried, and binds his legal representatives to carry out this agreement. It is to be noted that these payments are not stated to be for a particular purpose. It is significant that there is no reference to support or maintenance or alimony in connection therewith. If these payments had been intended for such purpose it is both natural and reasonable that some mention thereof would have been made. Such is the usual practice. In the acceptance of these payments they are not described as being for support or maintenance. They are accepted "together with" the other property in full settlement of her community interest *and* claim to alimony, support and maintenance. The

completeness of the agreement is indicated by the provision that if plaintiff brings suit to collect any of the monthly or other payments provided for therein defendant agrees to pay a reasonable attorney's fee. It will also be recalled that there is no provision for submission of the agreement for court approval in the event an action for divorce is filed.

The facts that there are no express provisions in the agreement for plaintiff's support; that the monthly payments are not designated for that purpose; that defendant's estate is obligated to complete performance of the agreement in the event of defendant's death; that provision is made for payment of attorney's fees if suit is brought upon the agreement; that there is no provision for submitting the agreement to the court for approval; that plaintiff accepted the monthly payments and the other property in full for both her community interest and claim to alimony as a package settlement; and that the parties desired to settle all questions relative to their property rights, point unerringly to the conclusion that it was the intention of the parties to completely adjust and settle their property rights and that the provision for the monthly payments constituted an integral and important element in the amicable adjustment of the property rights of the parties. (*Puckett* v. *Puckett, supra*; *Ettlinger* v. *Ettlinger, supra*; *Hamilton* v. *Hamilton, supra*; *Holloway* v. *Holloway,* 79 Cal.App.2d 44, 46 [179 P.2d 22]; *Kohl* v. *Kohl,* 66 Cal.App.2d 535, 541 [152 P.2d 494]; *Rich* v. *Rich,* 44 Cal.App.2d 526, 529 [112 P.2d 780]; *Hodgson* v. *Hodgson,* 6 Cal.App.2d 496, 498 [44 P.2d 544]; *Wallace* v. *Wallace,* 136 Cal.App. 488, 492 [29 P.2d 314].) The fact that the monthly payments ceased upon the remarriage of plaintiff is not persuasively significant since they are made a charge upon defendant's estate. This is particularly true when the contract is considered in its entirety. A like provision terminating payments upon the remarriage of the wife was contained in the Kohl, Puckett, Hamilton and Ettlinger cases, *supra,* yet the agreement in each of those cases was held to be a settlement of property rights and not one for support or alimony.

Although plaintiff referred to the agreement in her complaint as a property settlement agreement and described it as dividing their community property and providing for her support, she did not pray for alimony but only requested approval of the agreement. The court, in the interlocutory decree, however, designated the agreement as a property set-

tlement agreement, but did not order the defendant to perform any obligations thereunder. ▮ The fact that here, as in *Wallace* v. *Wallace, supra,* and *Hamilton* v. *Hamilton, supra,* the prayer of the complaint did not ask for alimony but merely that the property settlement agreement be approved, and that the decree did not undertake to make any award for alimony, but only approved the agreement without ordering the defendant to carry out his commitments therein (see *Howarth* v. *Howarth,* 81 Cal.App.2d 266, 271 [183 P.2d 670]) indicates that the trial court considered the agreement as a property settlement agreement and therefore designated it as such in the decree and did not consider it as providing for the plaintiff's support in the nature of alimony.

It should be noted that defendant has fully performed the agreement and has made the final payment when due and prior to the issuance of the order to show cause. ▮ To permit the agreement which the parties made for the purpose of completely and finally settling their financial obligations, and which has been fully performed, to become the foundation for alimony payments of an indeterminate duration would be to make a different contract from that which the parties intended and actually made and would result in defendant's being trapped by the agreement and default judgment. (See *Burtnett* v. *King,* 33 Cal.2d 805, 811 [205 P.2d 657, 12 A.L.R.2d 333].) If property settlement agreements are to continue to occupy a favored place in the law their integrity must be preserved.

The order of January 23, 1952, ordering defendant to pay $200 per month for plaintiff's support is reversed. The purported appeals from the other orders are dismissed.

Moore, P. J., and McComb, J., concurred.