[Civ. No. 21841. Second Dist., Div. Three. Dec. 27, 1956.]

BEATRICE P. ARTHUR, Plaintiff and Appellant, v. WILLIAM L. ARTHUR, Defendant and Appellant.

Abraham Marcus for Plaintiff and Appellant.

Erb, French, Picone & Griffin and John A. Griffin for Defendant and Appellant.

VALLÉE, J.—Plaintiff brought this action to establish a Nevada decree of divorce as a judgment of this state and to

enforce defendant's obligations thereunder and under a property settlement agreement.

The parties were married in 1936. They have two children. They separated in early 1946. On February 18, 1946, they entered into a property settlement agreement. The material parts of the agreement are these:

"The wife shall have the permanent and exclusive custody, care, maintenance and education of the children during their respective minorities. . . .

"The husband during his lifetime shall provide the means for the separate support and maintenance of the wife and for the support, maintenance and education of the children in the following manner:

"The sum of One Hundred Seventy-five ($175.00) Dollars commencing at the time of the signing of this agreement, and monthly thereafter. . . .

"In the event that the husband in any year shall earn a sum in excess of Six Thousand ($6,000.00) Dollars after the payment of State and Federal Income taxes upon his earnings, he shall be obligated to pay to the wife for her separate support and maintenance and for the support, amintenance [sic] and education of the children, in addition to the sums already provided for herein, Forty (40%) per cent of so much of such excess earnings as exceed Six Thousand ($6,000.00) Dollars and do not exceed Twelve Thousand ($12,000.00) Dollars and thirty-three and one-third (33⅓%) of any excess over and above Twelve Thousand ($12,000.00) Dollars. For the purpose of determining the amount of the husband's liability under this provision the husband shall be obligated to submit to the wife, not later than April 1, in each year, sworn, true and accurate copies of his State and Federal Income Tax Returns, evidencing his earnings for the preceding calendar year and such returns shall constitute the basis for computing the husband's liability. Any excess sums over and above the base and minimum figure of One Hundred Seventy-five ($175.00) Dollars monthly, hereinbefore provided for, shall be paid to the wife within ten days after such determination.

"All payments made to the wife shall be deemed to be apportioned as follows:

"One-third—(⅓) for the separate maintenance and support of the wife, and one-third (⅓) for the separate maintenance support and education of each of the children."

"The provisions of this agreement shall not be construed

to prevent either party from suing for an absolute or limited divorce in this or any other competent jurisdiction upon such grounds as they shall elect or as they may be advised; but any [sic] decree so obtained by either party shall in no way affect this agreement or any of the terms, covenants, or conditions hereof; it being agreed, that in the event a temporary or final judgment or decree shall be rendered in any action or proceedings between the parties hereto in which provision for the maintenance and support of the wife and minor may be appropriate, whether it may be a judgment or decree of absolute divorce or otherwise, such judgment or decree shall provide for the maintenance and support of the wife and said minor children according to the terms of this agreement, and this agreement shall be embodied in and made a part of such judgment or decree. It is agreed that this agreement is absolute, unconditional and irrevocable, and both parties intend during their respective lifetimes to be legally bound thereby.''

On May 23, 1946, defendant obtained a decree of divorce in Nevada. The decree contained this provision:

''It is further ordered, adjudged and decreed that the written agreement of plaintiff and defendant, entered into on February 18th, 1946, having been introduced in evidence as Exhibit 'A', is in all respects, just, fair, reasonable, equitable and it is, by this Court, ratified and approved and the provisions thereof are hereby adopted by this Court.''

Since the decree, defendant has remarried. Plaintiff has not remarried. In 1950 defendant earned $1,438.81 in excess of $6,000 after payment of state and federal income taxes; in 1951, in excess of $3,841.92; in 1952, in excess of $4,064.80; in 1953, in excess of $1,176.63; in 1954, in excess of $4,080.77. He paid nothing to plaintiff on account of such excess earnings.

The judgment established the Nevada decree as a judgment of this state, declared it to be in full force and effect, and adjudged that plaintiff recover from defendant the agreed percentage of his excess earnings less certain credits. Defendant appealed from the entire judgment; plaintiff appealed from parts thereof. The case is here on an agreed statement. The findings of fact and conclusions of law are not included.

The principal controversy is as to the meaning of the word ''earnings'' as used in the agreement—whether it means the earnings of defendant without deducting the community interest of his present wife therein or whether it means after

deduction of her community interest. The trial judge held it means the earnings of defendant without deducting the community interest of his present wife therein. We agree.

The learned trial judge filed a memorandum opinion which is part of the record on appeal. (Rules on Appeal, rule 5a; 36 Cal.2d 1, 5.) ██ We are partly in accord with that opinion, and the following portion is adopted and made a part of this decision:

"On the issue of the amount due plaintiff under the contract, the first questions [sic] is the meaning and effect of paragraph 4c thereof. This contract was executed in New York which does not have a community property system and its execution was apparently not in contemplation of any future marriage of defendant at all, much less one in a community property state. The language is very explicit: 'in the event that the husband in any year shall earn a sum in excess of $6,000.00 after the payment of State and Federal income taxes upon his earnings. . . .' The condition is his earning such excess sum and not whether by reason of any subsequent contract entered into between him and someone else, his right to the ownership or retention of the full amount of such excess sum should be terminated or diminished in favor of someone else. Certainly he could not be heard now to say that he did not owe plaintiff her percentage of such excess earnings because he had assigned the whole or any part thereof to someone else. So far as plaintiff is concerned, his contracting a marriage with another woman thereafter and his removal to the State of California where such other woman had a vested interest in half of his earnings as community property are no different in effect than his execution of an assignment of half of such earnings to some finance company in consideration of a loan. The court holds, therefore, that paragraph 4c of the contract was not altered or affected in any way by defendant's subsequent marriage."

It seems clear that the parties fixed the earnings of defendant as the measuring stick by which to determine the amount to be paid for the support of plaintiff and the children. The word "earnings" is used to indicate the amount produced, not that part only which may vest in defendant by virtue of the community property law.

██ As noted, the agreement provides that payments to plaintiff shall be deemed apportioned one-third for her support and one-third for support of each child. On July 1, 1954, plaintiff voluntarily sent one of the children to reside

with and to be cared for by defendant. Apparently the court allowed defendant a credit of one-third of the amount payable to plaintiff for the period of time that the child was in defendant's custody after July 1, 1954. Plaintiff asserts the court erred in doing so. She argues the agreement is not "subject to modification because it is a fully integrated agreement purporting to settle all property rights as well as support obligations." We think the court correctly construed the agreement.

The agreement provides separately for the support of plaintiff and for the support of each child—one-third of the amount agreed to be paid for plaintiff's support and one-third for each child's support. ▊ The parties are presumed to have known at the time the agreement was executed that the provision for support of the children was subject to modification by order of court. (Civ. Code, § 1655; *Rapp* v. *Rapp,* 218 Cal. 505, 507-508 [24 P.2d 161].) ▊ The agreement does not provide for custody of the child alone or for his support alone. It provides for custody and support. The support provision is not severable from the custody provision. The provision for support of each child is impliedly conditioned on plaintiff's having its custody. After July 1, 1954, defendant was under no obligation to make the payments for the support of the child who was in his custody.

The court held the property settlement agreement was not merged in the Nevada decree, and merely awarded plaintiff the percentage of defendant's excess earnings with interest. Plaintiff contends the agreement was merged in the decree and that defendant should have been ordered to make the payments for support therein provided.

In the recent case of *Foust* v. *Foust,* 47 Cal.2d 121 [302 P.2d 11], the decree of annulment read: "That the properties and property rights of plaintiff and defendant herein are adjusted, settled and distributed as per the terms and conditions of that certain AGREEMENT dated July 21st, 1943, executed by plaintiff and defendant herein, a full and true copy of which AGREEMENT is on file herein attached to said Stipulation marked 'Exhibit "A," ' and which is hereby approved by the Court and by this reference embodied and made a part of this Judgment." The court said "The only question to be determined is whether a property settlement agreement had been so merged into an annulment decree that its pro-

vision for monthly payments became an operative part thereof, enforceable by execution'' and held (p. 123) :

"The nature of the agreement, its attachment to the stipulation for judgment, the filing of both documents with the court, and the plain language of the stipulation and the judgment entered thereon make the conclusion inescapable that merger was intended, thereby substituting rights and duties under the decree for those under the agreement. (See Rest., Judgments, § 47, com. a; *Flynn* v. *Flynn,* 42 Cal.2d 55, 58 [265 P.2d 865]; *Hough* v. *Hough,* 26 Cal.2d 605, 609-610 [160 P.2d 15]; 1 Armstrong, California Family Law, pp. 810-811.) Since there is no evidence to the contrary, the trial court's conclusion that merger was not intended is not binding on this court. (*Fox* v. *Fox,* 42 Cal.2d 49, 52 [265 P.2d 881]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].)

"It was held in the Flynn case that incorporation of a property settlement agreement into a decree by reference does not preclude a merger. (*Flynn* v. *Flynn, supra,* p. 59.) When an agreement has been incorporated into a decree, it is as effectively a part thereof as if recited therein *in haec verba.* It is of no consequence here that the agreement was complete in itself, for it lost its identity in the decree. It is now the decree that declares the rights and obligations of the parties, for it 'ordered and adjudged . . . that the properties and property rights of [the parties] are adjusted, settled and distributed as per the . . . agreement . . . and which is hereby approved by the court and by this reference embodied in and made a part of this judgment.' . . .

"[P. 125.] Whenever it is intended that a property settlement agreement shall become merged in the decree, it is undoubtedly the better practice to have the terms of the agreement set forth *in haec verba* in the decree or by way of exhibit attached thereto, and to have the court employ explicit language in the decree showing that the rights and obligations of the parties are adjudicated by the decree in accordance with the terms of the agreement. And while 'greater certainty and clarity' may well be required to support contempt proceedings, we are satisfied that the language of the decree here shows that the agreement, filed with the stipulation, was merged in the decree, and that the manner in which the merger was effected makes the decree sufficiently certain to render it enforceable by execution. To hold otherwise would require the parties to engage in needless further litigation to merge the agreement into another decree or judg-

ment in order to obtain the enforcement thereof by any legal process. Such idle act should not be required.''

█ So in the present case the nature of the agreement, its provision that ''this agreement shall be embodied in and made a part of such [divorce] judgment or decree,'' its introduction in evidence, and the plain language of the decree ''make the conclusion inescapable that merger was intended, thereby substituting rights and duties under the decree for those under the agreement.'' There is no evidence to the contrary.

The judgment is affirmed insofar as it establishes the Nevada decree as a judgment of this state and awards plaintiff the agreed percentage of defendant's excess earnings. It is reversed insofar as it fails to adjudge that the property settlement agreement had been merged in the Nevada decree with directions to the superior court to amend the judgment accordingly and to order defendant to make the payments therein provided. Plaintiff shall recover costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.