[Civ. No. 23730. - First Dist., Div. One.   Aug. 30, 1967.]

JEAN JACKSON, Plaintiff and Respondent, v. WILLIAM R. JACKSON, Defendant and Appellant.

Norback & Law and Ernest H. Norback for Defendant and Appellant.

Schapiro & Thorn and Suzie S. Thorn for Plaintiff and Respondent.

SIMS, J.—Defendant has appealed from an order which determined his arrearages under the provisions of a property settlement agreement, and ordered that execution issue for that sum. (See Code Civ. Proc., § 963, subd. 2; and *Crowley* v. *Superior Court* (1936) 17 Cal.App.2d 52, 54 [61 P.2d 372].) He contends that the court had no jurisdiction to make that order in the divorce proceedings because (1) the provisions of the settlement agreement were not effectively merged in the divorce decree; (2) the issue of whether those provisions were incorporated in the divorce decree had been previously determined adversely to plaintiff wife by an order which became final in the absence of any appeal on her part; and (3) the wife's motion for appointment of a receiver did not encompass the relief actually granted.

A review of the record and applicable law demonstrates that the provisions of the settlement agreement were merged in the divorce decree to the extent that the agreement should be enforced in the divorce proceedings. Although a prior order, from which no appeal was taken, found nonmerger as an alternative ground for dismissing proceedings to construe the agreement, the particular circumstances of this case preclude defendant's reliance on the principle of res adjudicata to defeat plaintiff's pending and subsequent applications for relief in the divorce proceedings. The pendency of the motion for appointment of a receiver warranted the court's order which directed the issuance of a writ of execution.

*Statement of Facts*

On September 12, 1963, plaintiff wife filed her complaint for divorce in which she set forth the requisite jurisdictional and statistical facts, a list of the community property of the parties, and her grounds for divorce. Her prayer for relief included the following: ''That the court order defendant to pay a reasonable amount each month for the support and maintenance of plaintiff.''

Defendant husband filed an answer in which he admitted the jurisdictional and statistical facts, and the extent and nature of the community property, but denied the remaining allegations of the complaint.

On December 20, 1963, the parties executed an agreement in which they provided for a division of the community property, for monthly payments by the husband to the wife, and,

by way of further recitals and promises, for generally discharging the respective rights and obligations between themselves except as provided in the agreement. The agreement itself contains no provision which manifests that it was intended to submit the agreement to the court for approval, or that it was intended that the agreement or its provisions should be incorporated in the divorce decree. However, the copy of the agreement which the husband made part of his subsequently filed affidavit, in support of an order to show cause why the provisions of the agreement as approved should not be modified, bears an unexecuted indorsement indicating that the signed approval of the judge was contemplated. The paragraph providing for monthly payments reads as follows: ''Husband agrees to pay to wife the sum of $229.00 per month beginning January 1, 1964 and continuing until September 1, 1965 inclusive, and to pay the sum of $176.00 per month beginning October 1, 1965 and continuing until such time as wife becomes an employee with tenure in the San Francisco Unified School District or any other school district granting equivalent tenure benefits, at which time wife and husband agree to confer and re-negotiate regarding the aforesaid monthly payments, taking into account their respective circumstances at that time.''

The defendant and his attorney filed a stipulation waiving notice of time and place of trial and findings of fact and conclusions of law; and on December 23, 1963 the matter was heard as an uncontested divorce. The interlocutory decree signed and filed that day granted the wife's prayer for a divorce, and further recited: ''IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the property settlement agreement entered into by the parties and dated December 20, 1963, be and the same is hereby confirmed and approved and each of the parties hereto is hereby ordered to perform all of the conditions and covenants contained in said property settlement and agreement.'' No copy of the agreement was attached to the interlocutory decree, nor was it otherwise made a part of the clerk's record of the proceedings. It must be assumed, from the provisions of the decree, that the property settlement agreement was examined by the court, and was, therefore, part of the evidence considered, whether formally offered and received in evidence or not.

Thereafter, the defendant changed attorneys, and on June 22, 1964 filed his ''Notice of Motion to Set Aside Entry of Interlocutory Judgment.'' According to his affidavit the basis

for the modification was his misunderstanding of the nature of the agreement, and his ignorance of the extent and nature of his obligation to pay alimony.[1] At the same time he secured an order directing plaintiff to show cause why the agreement as approved in the decree should not be modified to provide that the $176 monthly payments would terminate December 31, 1965, or upon the earlier remarriage or death of the wife,[2] instead of as provided in the original agreement. This proposal was contained in the husband's affidavit in support of the order to show cause to which was attached a copy of the December 20, 1963, agreement. As grounds for modification, he stated: ''That since the entry of the previous decree plaintiff has resumed regular and steady employment as a teacher in the San Francisco Unified School District. Further, plaintiff has taken the position that the property settlement agreement is non-modifiable and has refused to engage in bona fide negotiations for bilateral modification of said agreement.''

The motion and order to show cause were regularly heard on July 24, 1964, and on November 20th the court signed and filed an order reading in part as follows: ''1. The motion to set aside the interlocutory decree of divorce is denied. 2. The property settlement agreement made by the parties on December 20, 1963 is an integrated agreement, and not modifiable by the court, and on that basis the order to show cause re modification is dismissed.''[3]

On December 23, 1964, a final judgment of divorce was signed, filed and entered. It echoed the provisions of the inter-

---

[1]The affidavit states: ''The basis for my requested modification is that my previous counsel of record did not advise me that the property settlement agreement would be treated legally as an integrated, non-modifiable agreement, and did not advise me that under the circumstances of this case, and in view of the brief period of marriage, my obligation for alimony could properly and legally terminate either by order of court or by agreement of the parties, and I therefore mistakenly believed that it was unnecessary to contest the plaintiff's divorce action, but instead permitted plaintiff to proceed on an uncontested basis herein and to secure alimony payments indefinitely, to my prejudice.''

[2]The provision sought read: ''Husband agrees to pay to wife the sum of $229.00 per month beginning January 1, 1964 and continuing until September 1, 1964 [sic 1965?] inclusive, and to pay the sum of $176.00 per month beginning October 1, 1965, but in no event shall any of the aforesaid monthly sums continue to accrue after December 31, 1965, but shall terminate effective December 31, 1965 or, in the event of the remarriage or death of plaintiff prior to that date, shall terminate effective on the happening of either of such events.''

[3]The order further recites: ''The minute order made by the court on July 28, 1964 is hereby superceded, vacated and set aside, the court being without jurisdiction to make said order.'' There is nothing in the record to indicate the tenor of the order of July 28th.

locutory decree with respect to the agreement of December 20, 1963.

In May 1965 plaintiff wife served and filed a notice of motion for an order appointing a receiver and for attorneys' fees in which she stated, "that defendant has failed to make payments under the property settlement agreement of the parties approved by the court in the amount of $229.00 per month since September, 1964, . . ." She alleged that a receiver was necessary to collect defendant's paycheck because his federal salary was exempt from execution. The attorneys' fees were sought for services rendered in resisting defendant's attempts to set aside the agreement, and in efforts to collect the sums legally owing.

Following hearings on the foregoing motion on June 22 and July 8, 1965, defendant countered with his "Motion and Notice of Motion for Declaration of the Existing Obligations of the Parties." He sought an "order declaring the existing obligations of the parties hereto, and more particularly determining whether there are or are not any monies now owed by the defendant to the plaintiff under the terms of the decrees of divorce heretofore entered in the within cause, approving that property settlement agreement between the parties dated December 20, 1963." This motion, and the pending prior motion of plaintiff came on for hearing in the law and motion department of the court on August 5, 1965, and the judge thereupon transferred defendant's motion to the domestic relations department, stayed the proceedings in which the plaintiff sought a receiver, and awarded her the attorney's fees she sought.

Defendant again changed attorneys. His motion subsequently was heard in the domestic relations department of the court on October 6th. On November 15, 1965 an order was filed which read as follows: "1. Determination of whether the property settlement agreement herein is an integrated one was heretofore made [November 20, 1964] and is res judicata as to that issue. 2. The said property settlement agreement was never incorporated in nor made an integral part of either the interlocutory or final decree herein. 3. The Court has no jurisdiction to rule on the motion of defendant for an interpretation of the agreement in this proceeding because of the foregoing."

The plaintiff wife then renewed her motion for the appointment of a receiver, and requested additional attorneys' fees. Defendant filed opposition on the grounds that the agreement upon which the alleged obligation was predicated was not

merged in the divorce decree; that the order filed November 12, 1965 so adjudged; that his liability under the agreement could only be determined in an independent action, and that such an action was pending, in that on December 20, 1965 he had filed an action against his ex-wife for declaratory relief with respect to his obligations under the agreement.

Thereafter, the court made the order appealed from, which was filed February 24, 1966, and which provides: "1. That the payments of $229.00 per month from defendant to plaintiff, payable beginning January 1, 1964 and continuing until September 1, 1965, inclusive, as provided for in the property settlement agreement of the parties dated December 20, 1963, are now due, owing and unpaid in the total sum of $2,902.00; 2. That execution may issue against defendant for said sum; and 3. That the motion for the appointment of a receiver is submitted and the matter is set for further hearing. . . ."

*Merger of the Agreement in the Decree*

Two general principles have been involved in the continuing litigation in this case. The proceedings instigated by the husband in June 1964 were predicated not only on the theory that the court had power to modify the interlocutory decree for good cause shown (see Code Civ. Proc., § 473; and *Fennell* v. *Fennell* (1962) 199 Cal.App.2d 267, 270 [18 Cal.Rptr. 743].) ; but also on the further postulates (1) that the provisions of the agreement were merged in the interlocutory decree so as to be modifiable (or enforceable) in the divorce proceedings,[4] and (2) that the provisions for support in the agreement were not so integrated with the provisions adjusting the property relations of the parties as to render the former nonmodifiable.[5]

---

[4]See *Foust* v. *Foust* (1956) 47 Cal.2d 121, 123-124 [302 P.2d 11]; *Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 57-59 [265 P.2d 865]; *Hough* v. *Hough* (1945) 26 Cal.2d 605, 609-614 [160 P.2d 15]; *Taliaferro* v. *Taliaferro* (1962) 200 Cal.App.2d 190, 196 [19 Cal.Rptr. 220]; *Noice* v. *Noice* (1961) 195 Cal.App.2d 204, 210-212 [15 Cal.Rptr. 703]; *Ebert* v. *Ebert* (1960) 185 Cal.App.2d 293, 295-296 [8 Cal.Rptr. 203]; *Tobin* v. *Tobin* (1960) 181 Cal.App.2d 789, 792 [5 Cal.Rptr. 712]; *Arthur* v. *Arthur* (1956) 147 Cal.App.2d 252, 257-259 [305 P.2d 171]; *Howarth* v. *Howarth* (1956) 146 Cal.App.2d 694, 696-697 [304 P.2d 147]; *Lubin* v. *Lubin* (1956) 144 Cal.App.2d 781, 786-788 [302 P.2d 49]; and *Shogren* v. *Superior Court* (1949) 93 Cal.App.2d 356 [209 P.2d 108], and earlier cases which the opinion reviews, pp. 358-364.

[5]See *DiMarco* v. *DiMarco* (1963) 60 Cal.2d 387, 391-393 [33 Cal.Rptr. 610, 385 P.2d 2]; *Bradley* v. *Superior Court* (1957) 48 Cal.2d 509, 518-519 [310 P.2d 634]; *Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 60-61 [265 P.2d 865]; *Hough* v. *Hough* (1945) 26 Cal.2d 605, 612 and 614-616 [160 P.2d 15]; *Levy* v. *Levy* (1966) 245 Cal.App.2d 341, 349-356 [53 Cal. Rptr. 790]; *Taliaferro* v. *Taliaferro* (1962) 200 Cal.App.2d 190, 195

It was assumed by the defendant husband both in his motion, and in his application for an order to show cause that the provisions of the settlement agreement which he sought to modify were properly merged in the interlocutory decree. The court, therefore, did not rule on this question. ■ It did determine that the agreement was an integrated agreement and therefore nonmodifiable (see fn. 5, *supra*). This determination having become final it is binding on both parties by application of the principle of res judicata. (*Bradley* v. *Superior Court* (1957) 48 Cal.2d 509, 518 and 522-523 [310 P.2d 634] [cf. *Lane* v. *Bradley* (1954) 124 Cal.App.2d 661, 666-667 [268 P.2d 1092]]; *Hough* v. *Hough* (1945) 26 Cal.2d 605, 614-616 [160 P.2d 15]; *Lee* v. *Lee* (1967) 249 Cal.App. 2d 407, 409 [57 Cal.Rptr. 327]; *Talman* v. *Talman* (1964) 229 Cal.App.2d 39, 41-42 [39 Cal.Rptr. 863]; *Taliaferro* v. *Taliaferro* (1962) 200 Cal.App.2d 190, 194-196 [19 Cal. Rptr. 220] [cf. *Taliaferro* v. *Taliaferro* (1954) 125 Cal. App.2d 419, 424-431 [270 P.2d 1036]; *Howarth* v. *Howarth* (1953) 115 Cal.App.2d 769, 770 [252 P.2d 743] [cf. *Howarth* v. *Howarth* (1947) 81 Cal.App.2d 266, 270-271 [183 P.2d 670]]; and see *Lake* v. *Bonynge* (1911) 161 Cal. 120, 129 [118 P.2d 535]; and *Estate of Harrington* (1905) 147 Cal. 124, 127-129 [81 P. 546, 109 Am.St.Rep. 118].)

When plaintiff sought relief in May 1965 she also assumed that the agreement was merged in the interlocutory and final decrees. The defendant's motion filed July 26, 1965 did not attack the jurisdiction of the court on the ground that the agreement was not merged in the decrees, but requested an "order declaring the existing obligations of the parties hereto, and more particularly determining whether there are or are not any monies now owed by the defendant to the plaintiff under the terms of the decrees of divorce heretofore entered in the within cause, approving that property settlement agreement between the parties dated December 20, 1963." The order of transfer made by the law and motion department also assumed that the court had jurisdiction in the divorce proceedings to review the settlement agreement. It recites: "IT Is HEREBY ORDERED: 1. That defendant's motion for interpretation of the property settlement agreement be transferred forthwith to the Domestic Relations Department of this court."

---

[19 Cal.Rptr. 220]; *Ebert* v. *Ebert* (1960) 185 Cal.App.2d 293, 297-300 [8 Cal.Rptr. 203]; and cf. *Lee* v. *Lee* (1967) 249 Cal.App.2d 407, 409 [57 Cal.Rptr. 327].

1034

The record fails to disclose when the point of nonmerger, which is embraced in the order of November 15, 1965, was first advanced, or at whose instance, although it is noted that defendant's present attorneys were substituted into the case after the transfer to the domestic relations department. Before considering the effect of the 1965 order, attention may be directed to the nonmerger principle upon which it is in part predicated. If that rule applies further discussion of the effect of the order is rendered moot. (See *Shogren* v. *Superior Court* (1949) 93 Cal.App.2d 356, 364 [209 P.2d 108].)

■ An examination of cases dealing with the question of merger (*supra*, fn. 4), reveals that the courts, in determining the intent of the parties and the intent of the court rendering the decree (see *Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 58 [265 P.2d 865]) have considered the following factors: (1) recitals in the agreement which indicate that it is to be presented to the divorce court for approval and/or incorporation in the decree; (2) the physical incorporation of the words of the agreement in either the body of the decree or as an exhibit attached thereto; (3) if not so attached, the extent to which the decree expressly purports to incorporate the provisions of the agreement, and the extent to which the agreement so incorporated can be identified from the terms of the decree; and (4) the extent to which the decree purports to order the performance of the terms of the agreement.

Two considerations may be noted. It is obvious that there is a tendency to refrain from making such an agreement, which involves the personal financial affairs of the parties, a matter of public record. If the agreement, as presented to the court, can be readily identified without controversy, there is no reason for not indulging this normal propensity. ■ Secondly, if it was not intended that the agreement be merged in the decrees, it was idle for the court to provide, "each of the parties hereto is hereby ordered to perform all of the conditions and covenants contained in said property settlement and agreement."

In *Foust* v. *Foust* (1956) 47 Cal.2d 121 [302 P.2d 11], the decree not only approved the agreement, but also expressly recited that "the . . . agreement . . . is . . . by this reference embodied in and made a part of this judgment." (See 47 Cal.2d at p. 124. Similar incorporation by express reference is found in *Flynn* v. *Flynn, supra,* 42 Cal.2d 55, 57 and 59; *Lubin* v. *Lubin* (1956) 144 Cal.App.2d 781, 786 [302 P.2d 49]; and see *Arthur* v. *Arthur* (1956) 147 Cal.App.2d 252,

255 [305 P.2d 171].) No such language is found in this case, but the decree does contain language not found in *Foust,* which reads, "and each of the parties hereto is hereby ordered to perform all of the conditions and covenants contained in said property settlement and agreement."

In *Flynn* v. *Flynn, supra,* 42 Cal.2d 55, the decree provided that the "defendant is hereby ordered to make all of the payments provided therein to be paid by him." (42 Cal.2d at pp. 57 and 59.) The language, however, was buttressed by other language of express incorporation (*id*). On the basis of both clauses the court had no hesitancy in concluding, "In the present case, however, there can be no doubt as to the intent of the parties and the court that a merger should occur." (*Id.,* p. 59.) Also, in *Noice* v. *Noice* (1961) 195 Cal.App.2d 204 [15 Cal.Rptr. 703], the fact that the decree ordered performance of the terms of the agreement was considered a significant factor in showing that merger was intended (195 Cal.App.2d at p. 212).

Several cases have indicated that mere approval of the agreement is insufficient to show merger of the terms of the agreement in the decree. (*Flynn* v. *Flynn, supra,* 42 Cal.2d 55, 58; *Lane* v. *Lane* (1953) 117 Cal.App.2d 247, 253 [255 P.2d 110]; *Hopkins* v. *Hopkins* (1953) 116 Cal.App.2d 174, 186 [253 P.2d 723]; *Howarth* v. *Howarth, supra,* 81 Cal.App. 2d 266, 270-273 [see also *Howarth* v. *Howarth* (1956) 146 Cal.App.2d 694, 696 [304 P.2d 147]]; *Schnerr* v. *Schnerr* (1932) 128 Cal.App. 363, 367 [17 P.2d 749]; cf. *Gregory* v. *Gregory* (1949) 92 Cal.App.2d 343, 351 [206 P.2d 1122]; and see *Price* v. *Price* (1948) 85 Cal.App.2d 732, 735-739 [194 P.2d 101], and the disapproval of that case in *Flynn* v. *Flynn, supra,* 42 Cal.2d at p. 60.) In none of those cases was there an order that the parties carry out the terms of the agreement. Furthermore, prior to the decision in *Bradley* v. *Superior Court, supra,* in 1957, there was some hesitancy in incorporating the provisions of the agreement into the divorce decree because it was believed that such incorporation automatically gave rise to the power to enforce the agreement by contempt. (See cases disapproved 48 Cal.2d at p. 522.) Neither the facts nor the rationale of the "approval" cases control the circumstances of this case.

It has been suggested that the merger of an agreement which has merely been introduced in evidence, and which is not otherwise a part of the record, should not be countenanced because "it could be withdrawn or destroyed and interested

parties could not, by searching the records of the court 'construct a complete picture of the rights and obligations of the parties' (*Price* v. *Price,* 85 Cal.App.2d 732, 735 . . . [194 P.2d 101]).'' (Carter, J. concurring and dissenting *Flynn* v. *Flynn, supra,* 42 Cal.2d 55, 63, and dissenting in *Foust* v. *Foust, supra,* 47 Cal.2d at p. 127.) The majority in *Flynn* rejected this contention, disapproved *Price* v. *Price, supra,* and stated, ''Thus in this case, the decree may be given its intended effect by referring to the adequately identified document, and the fact that the document is not a part of the permanent records of the court does not vitiate the decree. [Citations.]'' (42 Cal.2d at p. 60; and see *Noice* v. *Noice, supra,* 195 Cal.App.2d 204, 211; *Arthur* v. *Arthur, supra,* 147 Cal.App.2d 252, 255 and 259; *Lubin* v. *Lubin, supra,* 144 Cal.App.2d 781, 787.)

The question of identification of the agreement is not a substantial issue in this case. Even if it be assumed that the reference in the decree to the parties and the date of the agreement were insufficient, any shortcomings have long since been cured by making the agreement a matter of record in prior hearings. Those prior proceedings also manifest the parties' intention that the provisions of the agreement be deemed a part of the divorce decree. This case is governed by the following language from *Flynn*: ''These considerations may justify modifying the . . . decree on appeal to require that the agreement be attached to the decree. We do not believe, however, that they are sufficient to require us to hold that the decree, now final, is insufficient to effect its clearly stated intent.'' (42 Cal.2d at p. 59.)

■ Since the agreement was merged in the decree, and was integrated and nonmodifiable, the wife was entitled to have the sum due ascertained and to have a writ of execution issued to enforce payment of that sum. (*DiMarco* v. *DiMarco* (1963) 60 Cal.2d 387, 393-394 [33 Cal.Rptr. 610, 385 P.2d 2]; *Foust* v. *Foust, supra,* 47 Cal.2d 121, 124; *Hough* v. *Hough, supra,* 26 Cal.2d 605, 614; *Tobin* v. *Tobin* (1960) 181 Cal. App.2d 789, 792-794 [5 Cal.Rptr. 712].) In fact, in *Tobin* it was held error to deny a receiver under circumstances closely analogous to those alleged by plaintiff in this case. (181 Cal.App.2d at p. 794.)

*Effect of the Prior Order*

■ It is, therefore, necessary to determine the effect of the order made on November 15, 1965 in the domestic relations department. That portion of the order which recites,

"The said property settlement agreement was never incorporated in nor made an integral part of either the interlocutory or final decree herein" is deemed erroneous. The plaintiff failed to appeal from that order. Under the authorities set forth above in connection with the finality of the determination that the agreement was an integrated agreement, she may be barred from collaterally attacking the determination of nonmerger, even though it lacks foundation in the record. (See cases, *supra*, p. 1033, particularly *Taliaferro* v. *Taliaferro, supra,* 200 Cal.App.2d at p. 196; *Taliaferro* v. *Taliaferro, supra,* 125 Cal.App.2d at p. 425; and *Howarth* v. *Howarth, supra,* 115 Cal.App.2d at p. 770.)

Plaintiff asserts that the second order merely raises a conflict with the decrees and with the prior order in which the court did in fact exercise jurisdiction to determine the nature of the agreement. The general rule, however, is that where successive orders conflict, the later order will control. (See *Maloney* v. *Massachusetts Bonding & Ins. Co.* (1942) 20 Cal.2d 1, 6 [123 P.2d 449]; *Standard Oil Co.* v. *J. P. Mills Organization* (1935) 3 Cal.2d 128, 139 [43 P.2d 797]; and see Rest., Judgments, § 10, com. e, p. 64; § 42, p. 164; and § 67, p. 286.)

Blind adherence to the foregoing principle leads to a violation of the reasoning of *Foust* where the court concluded: "[W]e are satisfied that the language of the decree here shows that the agreement, filed with the stipulation, was merged in the decree, and that the manner in which the merger was effected makes the decree sufficiently certain to render it enforceable by execution. To hold otherwise would require the parties to engage in needless further litigation to merge the agreement into another decree or judgment in order to obtain the enforcement thereof by any legal process. Such idle action should not be required." (47 Cal.2d at p. 125.)

"The rule of *res adjudicata* is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy, . . ." (*Miller & Lux, Inc.* v. *James* (1919) 180 Cal. 38, 44 [179 P. 174]; and see 3 Witkin, Cal. Procedure (1954) Judgments, § 44, p. 1926.) It is obvious that the application of the rule to this case will subvert the purpose of the doctrine. It will prolong and extend the litigation between the parties and cause wasted effort and expense in judicial administration. It has twice been adjudicated that defendant is bound by the terms of the agreement and that it is nonmodi-

fiable. (See, *supra*, fn. 5.) It has once been determined that the defendant was not entitled to be relieved from the effect of the agreement because of mistake. (Cf. *Carp* v. *Carp* (1928) 94 Cal.App. 657, 658-659 [271 P. 575].)

In any collateral action be may be estopped from challenging the validity of the agreement because he twice submitted it to the divorce court. This may be so even though plaintiff, by failure to appeal from the 1965 order, cannot assert that the divorce court had jurisdiction over the agreement. Defendant should not be permitted to attack that part of the 1965 order which recognizes the agreement as integrated and nonmodifiable. The order based on several grounds is res adjudicata as to each. (See *Grable* v. *Grable* (1960) 180 Cal.App.2d 353, 360 [4 Cal.Rptr. 353] ; *Braye* v. *Jones* (1954) 129 Cal.App.2d 827, 830 [278 P.2d 29].) A party should not be permitted to attack a judgment which resulted from the voluntary submission of a controversy to a tribunal which it is later claimed lacked jurisdiction over the subject matter. (See Rest., Judgments, § 10, coms. a, b and c, pp. 57-62.) The 1964 order, therefore, though inconclusive because of a subsequently binding order, which purports to establish lack of jurisdiction over the agreement, may still have some effect. This should be particularly true where the intervening judgment is predicated upon an erroneous hypothesis, and is based on alternative grounds. (Cf. Rest., Judgments, § 68, subd. *l*, p. 306, and coms. a, b, c, *l*, m and n, pp. 293-296 and 306-308.) [6]

It is unnecessary to send the parties to another forum under the circumstances of this case in which the defendant has twice asked the court for relief on the theory that the agreement was before the court as a result of its merger in the decrees.

The relief granted in the 1965 order of the domestic relations department exceeds and is inconsistent with that sought by defendant's motion, and with that suggested by the law and motion department's order of referral. On the other hand, it is generally recognized that questions of jurisdiction are never waived, and can be raised at any time before the judgment or order becomes final. (*Costa* v. *Banta* (1950) 98 Cal.App.2d 181, 182 [219 P.2d 478].) It must be concluded that the domestic relations department had the jurisdiction

---

[6]It may further be noted that in 1964 defendant apparently did not attack the promise to pay $229 per month beginning January 1, 1964 until September 1, 1965, inclusive, (cf. text p. 3, and fn. 2). The order under scrutiny only relates to arrearages for this period (see text, p. 7).

and power to make the erroneous order concerning its own jurisdiction.

Nevertheless, it has been held that under special circumstances the doctrine of res judicata will not be applied. In *Greenfield* v. *Mather* (1948) 32 Cal.2d 23 [194 P.2d 1], the majority concluded: "We are mindful of the rule that a judgment rendered in an action in personam by a court having jurisdiction over the subject matter and the parties is not void and subject to collateral attack merely because it may erroneously determine some matter not specifically raised in the pleadings, and not covered by the evidence before the trial court, and that such a judgment is res judicata. We adhere to this rule. (See *Kupfer* v. *Brawner*, 19 Cal.2d 562 [122 P.2d 268]; *Estate of Keet*, 15 Cal.2d 328 [100 P.2d 1045].) But in rare cases a judgment may not be res judicata, when proper consideration is given to the policy, underlying the doctrine, and there are rare instances in which it is not applied. In such cases it will not be applied so rigidly as to defeat the ends of justice or important considerations of policy. (See, *Guardianship of Di Carlo*, 3 Cal.2d 225 [44 P.2d 562, 99 A.L.R. 990]; 50 C.J.S., Judgments, § 592.)'"[7] (32 Cal.2d at p. 35; and see *Horn & Barker, Inc.* v. *Macco Corp.* (1964) 228 Cal.App.2d 96, 114-115 [39 Cal.Rptr. 320]; *Nevarov* v. *Caldwell* (1958) 161 Cal.App.2d 762, 768-769 [327 P.2d 111]; and cf. *Chappelle* v. *City of Concord* (1956) 144 Cal. App.2d 822, 826 [301 P.2d 968].)

The special circumstances 'upon which the court relied are narrated as follows: "It is apparent from the foregoing that we have here a plea of res judicata, based upon a judgment rendered in an action where, in the proceedings therein, there were no pleadings or evidence on the issue claimed to be adjudicated. While in that action the issue as to the respective interests in the claim against the Greenfield estate (one-half to each) was considered, there was never involved, nor was any consideration given to the question as to what payments had been made on the respective interests in said claim by the administrators of the Greenfield estate to either of the parties. The decisions of this court in 22 Cal.2d 713, and 25 Cal.2d 582, which led to the judgment claimed to be res judicata are conflicting, and this court was obviously misled and mistaken as to the true issues involved. Inconsistent positions have been

---

[7]This doctrine has not been overruled despite severe criticism. (See dissenting opinion of Traynor, J., 32 Cal.2d at pp. 35-52; and 3 Witkin, Cal. Procedure (1954) Judgments, § 45, subd. d, pp. 1928-1929.)

taken by both parties in these actions, and in view of the prior positions taken by Mr. Mather, he has little if any basis for reliance on the judgment in the Los Angeles action as res judicata of the issue in this action as to the amount to which the respective parties are entitled from the fund on deposit in said court." (*Id.*, at p. 34.)

In this case, also, the prior orders in the divorce proceedings are conflicting in part. The second order, although final, is patently erroneous. The defendant has taken inconsistent positions. This case presents appealing circumstances for divergence from the general rule because adherence to that rule would cause more, rather than less, litigation, and would afford an opportunity for the relitigation of matters which have already been fully contested and adjudicated between the parties. The application of the rule under the circumstances of this case would defeat the ends of justice and the policy upon which the rule itself rests. The trial court properly refused to give effect to that portion of the order of November 14, 1965 which purported to divest the court of the power to enforce the provisions of the settlement agreement.

*Scope of Relief*

The order adjudicating the amount due and authorizing the issuance of a writ of execution was not only within the proper exercise of the powers of the court (see cases cited p. 1036, *supra*), but also was within the scope of the relief sought by plaintiff's motion for the appointment of a receiver.

■ The provisions of section 140 of the Civil Code, which authorize the appointment of receivers, apply to payments under an integrated property settlement agreement which is merged in the divorce decree. (*Tobin* v. *Tobin, supra,* 181 Cal.App.2d 789, 791-794.) These provisions should be construed with the general provisions pertaining to receivers found in sections 564-570 of the Code of Civil Procedure. (See *McClenny* v. *Superior Court* (1964) 62 Cal.2d 140, 148 [41 Cal.Rptr. 460, 396 P.2d 916] ; *Murray* v. *Murray* (1896) 115 Cal. 266, 274-275 [47 P. 37, 56 Am.St.Rep. 97, 37 L.R.A. 626] ; *Guay* v. *Superior Court* (1957) 147 Cal.App.2d 764, 768-769 [305 P.2d 990].) ■ Generally, because of its drastic nature, receivership should not be resorted to unless other remedies are inadequate. (See *Alhambra-etc. Mines, Inc.* v. *Alhambra Gold Mine Corp.* (1953), 116 Cal.App.2d 869, 873 [254 P.2d 599].) Receivership may not ordinarily be used for the enforcement of a simple money judgment (*White* v. *White* (1900) 130 Cal. 597, 599 [62 P. 1062, 80 Am.St.Rep. 150] ;

and see Code Civ. Proc., § 564, subd. 3), but under proper circumstances a receiver may be appointed in aid of execution. (*Bruton* v. *Tearle* (1936) 7 Cal.2d 48, 53 [59 P.2d 953, 106 A.L.R. 580]; *In re Ferguson* (1954) 123 Cal.App.2d 799, 804 [268 P.2d 71]; *Medical Finance Assn.* v. *Short* (1939) 36 Cal.App.2d Supp. 745, 747 [92 P.2d 961]; and see Code Civ. Proc., § 564, subd. 4; and §§ 714-723.)

The court's order for a writ of execution may be deemed an exercise of discretion to use a less drastic remedy than that authorized by section 140 of the Civil Code, or be construed as a preliminary step to appointing a receiver in aid of execution. In either event, it is embraced within the relief which plaintiff sought in her motion.

The order of February 24, 1966, which provides for the issuance of a writ of execution, is affirmed.

Molinari, P. J., and Elkington, J., concurred.