[No. G000193. Fourth Dist., Div. Three. Feb. 27, 1985.]

In re the Marriage of BETTIE J. and HOWARD T. LANE.
BETTIE J. LANE, Respondent, v.
HOWARD T. LANE, Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976(b), parts III and IV are not published, as they do not meet the standards for publication.

COUNSEL

LaFollette, Johnson, Schroeter & DeHaas, Daren T. Johnson and Alfred W. Gerisch, Jr., for Appellant.

Wayne I. McClaskey for Respondent.

OPINION

**SONENSHINE, J.**—Husband appeals a postdissolution judgment against him and in favor of wife for breach of warranty of a provision in their marital settlement agreement.

Husband and wife married in 1967 and separated on September 15, 1975. Two months later they met with Michael Cohen, an attorney. The parties brought a proposed settlement with them hoping Cohen could represent both. However, Cohen explained he could not and, because he had previously represented husband, suggested wife seek her own counsel. Wife retained Gerald Newhouse.[2] At the first meeting on December 15, 1975, she gave him financial information which husband had provided to her.[3]

The two attorneys thereafter entered into settlement negotiations. On December 30, 1975, they met with husband. Additional financial information

---

[2]Cohen referred wife to Newhouse. The two attorneys shared office space.

[3]The documents included Ernst & Ernst audited financial statements for the Lane Company for years 1973 and 1974, the Howard T. Lane financial statement, July 31, 1975, the individual tax returns for 1973 and 1974, a brochure describing the Laguna Niguel house, a list of community assets dated December 12, 1975, the community property agreement, and the Lane family trust agreement.

was given by husband to Newhouse[4] who said he needed still more documentation.

Wife filed the dissolution action on January 5, 1976. She hired an appraiser to review the documentation supplied by husband and to render an opinion concerning the value of certain of the parties' assets.

After continued negotiations, the parties executed a marital settlement agreement on April 5, 1976. The interlocutory decree was entered on June 15 and the final judgment on July 26. Three years later wife filed the underlying complaint alleging fraud and seeking to set aside the judgment. Thereafter she amended the complaint to add a cause of action for breach of the warranty provisions of the marital settlement agreement.[5]

At the time of trial wife elected the remedy of breach of contract warranty and the court dismissed all other causes of action. The jury returned a verdict for wife and against husband in the amount of $2,077,000.

## I

The marital settlement agreement executed by the parties contained the following provisions: "The consent of Petitioner to convey or release her interest in the HOWARD T. LANE CORPORATION, a corporation, is given in reliance upon information and data furnished to Petitioner's counsel by Respondent and Respondent's counsel, and *Respondent warrants said information to be accurate and current*; . . ." (Italics added.)

Husband argues the court had no jurisdiction to allow the jury to determine whether there was a breach of the warranty. He claims wife "was attempting to retry the question of the parties respective interests in the community property" and concludes the doctrine of res judicata prohibits her from proceeding.

Husband cites voluminous authority for the proposition "[a]n issue determined by the court in a judgment (including one rendered pursuant to default proceedings) is a 'litigated issue' and conclusively establishes every matter that might have been used for or against that issue in its determination." As husband states, and as the authority upon which husband relies holds, those issues once litigated cannot be retried. Res judicata is a bar despite the guise under which the issue is presented.

---

[4]These documents included a financial statement through November 30, 1975, a balance sheet of the Howard T. Lane Company, and a "cash report, December, 1975."

[5]She also filed a supplemental complaint seeking imposition of constructive trust on real property.

■ But the issues litigated in the breach of warranty action *were not* determined in the dissolution proceeding. The interlocutory decree of dissolution determined what was separate and community property. It confirmed the separate property to the respective parties and awarded the community property to them. The court did not, as husband alleges, determine whether the information given to wife by husband and his counsel was either accurate or current.

Husband points to wife's prayer where she sought a judgment "[f]or an award of community property representing plaintiff's one-half interest" and the trial court's directive to the jury when they were told it was their task to determine "whether and to what extent, if any, the plaintiff received less than one-half of the community property by the parties. . . ." However, husband ignores the *initial determination* required of the jury, namely, whether the warranty had been breached. Only after a finding of breach, were they to determine its *effect*.

And lastly, husband argues because wife *"could have* litigated as part of the Dissolution [*sic*] proceedings the value of the community property and whether and to what extent she was receiving one-half" she is now precluded from going forward. We disagree. Wife did not litigate the value of the assets because the information upon which she relied was warranted as being accurate and current. She had a right to rely on the warranty. Obviously, the warranty would be of little value to wife if she could not be compensated for its breach.

## II

■ Husband next argues the parties' marital settlement agreement was merged into the interlocutory judgment and thus the warranty was extinguished.

■ If the court approves the terms of an agreement as being fair and equitable, its enforcement may rest in a cause of action for its breach. (*Flynn* v. *Flynn* (1954) 42 Cal.2d 55 [265 P.2d 865].) If, however, a marital settlement agreement *merges* into the judgment, the agreement is superseded by the decree and can only be enforced as a judgment and not as a contract. (*Hough* v. *Hough* (1945) 26 Cal.2d 605 [160 P.2d 15].)

"An examination of cases dealing with the question of merger [citation], reveals that the courts, in determining the intent of the parties and the intent of the court rendering the decree [citation] have considered the following factors: (1) recitals in the agreement which indicate that it is to be presented to the divorce court for aproval [*sic*] and/or incorporation in the decree; (2)

the physical incorporation of the words of the agreement in either the body of the decree or as an exhibit attached thereto; (3) if not so attached, the extent to which the decree expressly purports to incorporate the provisions of the agreement, and the extent to which the agreement so incorporated can be identified from the terms of the decree; and (4) the extent to which the decree purports to order the performance of the terms of the agreement." (*Jackson* v. *Jackson* (1967) 253 Cal.App.2d 1026, 1034 [62 Cal.Rptr. 121].)[6]

 Paragraph 12 of the interlocutory judgment states: "The court has reviewed the Marital Settlement Agreement filed by these parties in the within action and finds the agreement to be fair and equitable and orders each of the parties to comply with all of its provisions." Thus, the agreement was *not expressly* incorporated into the judgment but the parties were ordered to comply with all of its provisions. Husband relies on *Jackson* v. *Jackson, supra,* 253 Cal.App.2d 1026 which determined a merger had occurred despite the lack of any specific language of incorporation in the judgment. The court cited with approval *Noice* v. *Noice* (1961) 195 Cal.App.2d 204 [15 Cal.Rptr. 703] where "the fact that the decree ordered performance of the terms of the agreement was considered a significant factor in showing that merger was intended." (*Id.,* at p. 1035.)

We do not find *Jackson* controlling. *Jackson* involved a husband who "appealed from an order which determined his arrearages under the provisions of a property settlement agreement. . . ." (*Id.,* at p. 1028.) The court concluded a merger had taken place "to the extent that the agreement should be enforced in the divorce proceedings. Although a prior order, from which no appeal was taken, found nonmerger as an alternative ground for dismissing proceedings to construe the agreement, the particular circumstances of this case preclude defendant's reliance on the principle of res judicata to defeat plaintiff's pending and subsequent applications for relief in the divorce proceedings." (*Id.,* at p. 1028.)

In other words, the *Jackson* court found, at least as to orders made and not complied with, the wife should enforce her rights via contempt or execution and not by way of a breach of contract cause of action. The *Jackson* court also noted, "if it was not intended that the agreement be merged in the decrees, it was idle for the court to provide, 'each of the parties hereto is hereby ordered to perform all of the conditions and covenants contained in said property settlement and agreement.'" (*Id.,* at p. 1034.) But here,

---

[6]The marital settlement agreement is not part of the record, hence its recitals cannot be reviewed. And we cannot review the "physical incorporation of the words of the agreement." Therefore, we focus our attention on the third and fourth factors.

the warranty could not be enforced in the dissolution action and therefore it was not an idle act for the trial court to order the parties *to comply* with all the provisions.

Nor are we impressed with husband's reliance on *Kelley* v. *Kelley* (1977) 73 Cal.App.3d 672 [141 Cal.Rptr. 33]. In *Kelley,* wife attempted in a post-dissolution civil complaint to have husband's retirement pay declared to be community property. The court found wife *was aware* of the pension at the time of the dissolution and thus was precluded from seeking any interest in it. "Here [wife] was fully cognizant of [husband's] status as retired and was aware of the fact he was to receive a pension. She was, however, mistaken as to her legal rights to that pension. She elected to decide the merits of a claim without aid of legal counsel and personally contributed to any mistake as to the character of the property. [Husband] was not a party to that mistake and did not conceal the facts or otherwise participate in any wrongdoing." (*Id.,* at p. 678.)

But this is not our case. Here a spouse is suing on a warranty in a marital settlement agreement. The warranty was not incorporated into the judgment but it was by its very terms a crucial element of wife's "consent . . . to convey or release her interest in the . . . parties' largest asset."

The effect of finding the marital settlement agreement merged into the judgment would be incongruous. The warranty would have been in effect from only April 5, 1976 to June 25, 1976. After that, wife's only remedy would have been for extrinsic fraud, a remedy she already possessed. The result of a merger is to replace the methods for enforcement of contract provisions with those available pursuant to a judgment, namely execution, levy and contempt. Enforcement of a warranty provision is not amenable to the latter methods. Thus merger would not continue the warranty (merely making it subject to a different enforcement process) but would in fact extinguish it.

Other provisions in the interlocutory judgment support the conclusion that the parties did not intend a merger. Paragraph 13 states: "Except as otherwise provided for in this Interlocutory Judgment of Dissolution of Marriage, the court orders the parties to release each other from all claims, liabilities, debts, obligations, actions, and causes of action of every kind that have been or will be incurred. In making this order, *neither party is relieved or discharged from any obligation contained in this order or any instrument or document executed pursuant to this dissolution of marriage.*"

(Italics added.) Thus the parties agreed husband was not released from the warranty contained in the marital settlement agreement.[7]

And finally, we are impressed with the concluding paragraph of the interlocutory judgment. "With respect to the Marital Settlement Agreement entered into by the parties and filed herein the court orders: [¶] A. The agreement, except as otherwise provided in this order, shall be binding on, and shall inure to the benefit of, the respective legatees, devisees, heirs, executors, administrators, assigns and successors in interest to the parties. [¶] B. If any provision of that agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless remain in full force and effect without being impaired or invalidated in any way. [¶] C. If there should be a reconciliation of the parties after the date of this order, the agreement and order shall nevertheless continue in full force until it is modified or abrogated by another written instrument to that effect signed by each of the parties hereto and confirmed by this court."

If the parties and the court did not intend the marital settlement agreement to have an independent existence, why did the parties agree and the court allow it to be binding on their heirs and survive reconciliation? The answer is obvious; *this agreement* was not superseded by the judgment.

### III*

. . . . . . . . . . . . . . . . . . . . . . .

Judgment affirmed. Costs to be borne by appellant. The trial court is directed to determine respondent's reasonable attorney's fees on appeal.

Trotter, P. J., and Rickles, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied May 15, 1985.

---

[7]Husband argues, "Paragraph 13 of the Interlocutory Decree cited by Plaintiff first orders the parties to release each other from 'all claims, liabilities, debts, obligations, actions and causes of action of every kind that have been or will be incurred'. [*Sic.*] Paragraph 13 then merely provides that the parties are not released from any obligation to perform the terms of the Decree, including the obligations contained in all documents executed by the parties *as required* by this 'Interlocutory Judgment of Dissolution of Marriage'. [*Sic.*] The paragraph specifically contemplates the documents executed by the parties as required in the decree and after the dissolution of marriage, including tax returns, policies of insurance and the like." (Italics added.) However, husband *miscites* the language of paragraph 13 and therefore misconstrues its meaning.

*See footnote 1, *ante,* page 1143.

†Assigned by the Chairperson of the Judicial Council.